**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF COLUMBIA**

| | |
|---|---|
| CIERRA SAUNDERS,<br>as Parent and Next of Friend of D.S.,<br>3481 Stanton Road SE<br>Washington, D.C. 20020 | )<br>)<br>)<br>)<br>) |
| PLAINTIFF, | )<br>) |
| v. | ) Case No.: _____<br>) Judge:<br>) Case Type: Education<br>)<br>) Jury Trial Demanded) |
| THE DISTRICT OF COLUMBIA<br>PUBLIC SCHOOLS<br>1200 First Street, NE<br>Washington, DC 20002 | )<br>) Date Stamp:<br>)<br>)<br>) |
| THE DISTRICT OF COLUMBIA<br>A Municipal Corporation<br>400 6th Street NW<br>Washington, D.C. 20001 | )<br>)<br>)<br>)<br>) |
| To serve: | )<br>) |
| MURIEL BROWSER, Mayor<br>District of Columbia<br>400 6th Street NW<br>Washington, D.C. 20001 | )<br>)<br>)<br>)<br>) |
| BRIAN SCHWALB<br>Attorney General<br>400 6th Street NW<br>Washington, D.C. 20001 | )<br>)<br>)<br>)<br>) |
| DEFENDANTS. | )<br>) |

1

## **COMPLAINT**

COMES NOW Plaintiff Cierra Saunders, (hereinafter, "Parent," "Ms. Saunders," "Plaintiff C.S.," "Plaintiff"), as Parent and Next Friend of D.S. ("the Student," "Student," "Plaintiff D.S.," "D.S.," "DS") (collectively "Plaintiffs"), by and through the undersigned counsel, Stephenson Harvey, Jr., Esquire and Keith L. Howard, Esquire, as a party aggrieved by a Hearing Officer ("H.O." or "HO") Decision ("HOD" or "Decision").

This is a claim for declaratory relief brought under the Individuals with Disabilities Education Act, 20 U.S.C. 1400 et seq. (IDEA). Plaintiffs respectfully request that this Honorable Court determine the following: 1) declare that the HOD was partially wrong; 2) declare that the HOD was not regularly made with respect to whether the statute of limitations should be tolled to consider the appropriateness of the March 30, 2022, IEP and whether the March 30, 2022, and March 29, 2023, IEPs were appropriate pursuant to the Individuals with Disabilities Education Act ("IDEA"); 3) reverse the HOD on the issues of whether Plaintiff C.S. knew or should have known of the IDEA violations justifying the tolling of the statute of limitations related to the appropriateness of the March 30, 2022, IEP, and whether the March 30, 2022, and March 29, 2023 IEPs were appropriate, set forth under the IDEA; 4) issue judgment for Plaintiffs on all issues set forth, find that the Decision was partially wrong, flawed and clearly erroneous, and that the administrative findings therein were not regularly made; 5) deem Plaintiffs the prevailing party and award D.S. compensatory education relief as recommended by the expert report; 6) provide declaratory relief and partial reversal of HOD under the Individuals with Disabilities Education Act ("IDEA"); and 7) award Plaintiff C.S. reasonable attorney's fees and costs for the instant federal action, costs, expert fees and costs, and also reasonable attorney's fees, expert fees and

costs for the underlying administrative litigation.  Plaintiff C.S. and Plaintiff D.S. ("Plaintiffs")

plead as follows:

## I.    PRELIMINARY STATEMENT

1. D.S., by Parent and Next Friend of D.S., Plaintiff C.S. files this complaint against the District of Columbia ("Defendant D.C.," or "D.C.") and District of Columbia Public Schools ("DCPS," "District" or "the District") (collectively, "Defendants") for their failure to provide D.S. a free appropriate public education ("FAPE"), in violation of the IDEA and corresponding state law.

2. HO reached a decision far from the accepted norm of a fact-finding process, failed to apply the proper legal standard and conduct a proper legal analysis with respect to the asserted claims in the Due Process Complaint ("DPC"), made certain findings of facts that were not in accord and consistent with the evidence adduced at the administrative hearing, made incorrect rulings during the administrative hearing whereby Plaintiffs were seriously prejudiced and made substantive and procedural errors, as well as significant mistakes of law and fact in the HOD that it rendered said decision partially wrong, not regularly made, flawed, erroneous and severely prejudicial to the Plaintiffs.

3. A true and correct copy of the HO Decision is attached hereto as Exhibit 1.

## II.    JURISDICTION & VENUE

4. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

5. On or about September 27, 2024, Plaintiffs requested a due process hearing with the District of Columbia Office of the State Superintendent of Education.

6.  The Due Process Hearing was convened on December 2, 2024, December 4, 2024, December 5, 2024, and December 6, 2024. (Exhibit 1-Hearing Officer Decision).

7.  The HO had jurisdiction over this matter pursuant to the IDEA, 20 U.S.C. § 1400 *et seq.*; the implementing regulations for IDEA, 34 C.F.R. Part 300; and Title V, Chapter E-30, of the District of Columbia Municipal Regulations ("D.C.M.R.").

8.  This Court has jurisdiction of actions brought under 20 U.S.C. § 1415 pursuant to 20 U.S.C. §1415(i)(3)(A) without regard to the amount in controversy.

9.  Venue is properly laid in the United States District Court for District of Columbia, as authorized by 28 U.S.C. § 1391, because Defendant D.C. is located within the District of Columbia and a substantial part of the acts or omissions giving rise to this complaint arose from events occurring within this judicial Defendant.

10. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; 28 U.S.C. §§ 2201 and 2202; and 20 U.S.C. § 1682.

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which gives federal district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

12. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a), which gives federal Defendant court's original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of

Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

13. This is an action arising under the laws of the United States and an action by Plaintiffs, who are aggrieved by the actions and inactions of Defendants and decisions of the Administrative Law Judge below pursuant to 20 U.S.C. § 1415(f), 20 U.S.C. § 1415(g).

14. This Complaint is timely filed under 20 U.S.C. § 1415(i)(2)(B) and which provides that any appeal of a due process decision must be filed in a district court of the United States, within ninety (90) days of the date of decision by a hearing officer.

15. On December 14, 2024, the Honorable Hearing Officer, Mr. Peter B. Vaden, Jr., serving as a hearing officer ("H.O.") at the request of the District of Columbia Office of the State Superintendent of Education, issued a written Decision following a four-day due process hearing. The HOD set forth his Findings of Fact and Conclusions of Law in favor of Plaintiffs on one of the two issues that H.O. Vaden decided against Defendants on the remaining issue. With regard to the issue of whether Defendants denied D.S. her rights pursuant to Section 504 and the ADA, H.O. Vaden determined the administrative tribunal did not have jurisdiction over that issue.

16. Plaintiffs have exhausted all appropriate administrative remedies.

## III.    APPLICABLE LAW AND POLICY

17. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

18. In 1955, the United States Supreme Court found unconstitutional the segregation of students based on race. *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.,* 347 U.S. 483, 495, 74 S. Ct. 686, 692, 98 L. Ed. 873 (1954), supplemented sub nom. *Brown v. Bd.*

*of Educ. of Topeka, Kan.*, 349 U.S. 294, 75 S. Ct. 753, 99 L. Ed. 1083 (1955)  "We conclude that in the field of public education the doctrine of 'separate but equal' has no place. Separate educational facilities are inherently unequal. Therefore, we hold that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment." *Id*.

19. The Court further noted the following regarding segregation:

Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms. *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.,* 347 U.S. 483, 493, 74 S. Ct. 686, 691, 98 L. Ed. 873 (1954), *supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294, 75 S. Ct. 753, 99 L. Ed. 1083 (1955).

20. In *Mills v. D.C. of Education of the District of Columbia*, this Court noted that "the D.C. of Education has an obligation to provide whatever specialized instruction that will benefit the child. By failing to provide plaintiffs and their class the publicly supported specialized education to which they are entitled, the D.C. of Education violates the above statutes and its own regulations." *Mills v. Bd. of Ed. of D.C.*, 348 F. Supp. 866, 874 (D.D.C. 1972).

21. The Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") requires that states make available a FAPE to all children with disabilities residing in the state. 20 U.S.C. § 1412(a)(1)(A). The IDEA sets forth procedural and substantive requirements to which Defendants must adhere to ensure that each child with a disability receives a FAPE. 20 U.S.C. § 1401 *et seq.*

22. The purposes of the IDEA include "ensur[ing] that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

23. Before Congress enacted the IDEA (previously known as the Education for all Handicapped Children Act of 1975), children with disabilities were completely excluded from the public school system in the United States. *See* 20 U.S.C. § 1400(c)(2).

24. One of the central mandates of the IDEA is to educate children with disabilities in the least restrictive environment (LRE), requiring:

> To the maximum extent appropriate, children with disabilities are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. 20 U.S.C. § 1412(a)(5)(A).

25. When reauthorizing the IDEA in 2004, Congress found "the implementation of this chapter ha[d] been impeded by low expectations, and an insufficient focus on applying replicable research on proven methods of teaching and learning for children with disabilities," 20 U.S.C. § 1400(c)(4), and renewed its commitment to placing children with disabilities in

the regular education environment. In doing so, Congress relied on "[a]lmost 30 years of research and experience . . . demonstrat[ing] that the education of children with disabilities can be made more effective by . . . having high expectations for such children and ensuring their access to the general curriculum in the regular classroom, to the maximum extent possible." 20 U.S.C. § 1400(c)(5).

26. Defendants the District of Columbia and DCPS, a local educational agency ("LEA"), must "ha[ve] in effect policies, procedures, and programs that are consistent with the State policies and procedures" established under the IDEA in providing for the education of children with disabilities within its jurisdiction. 20 U.S.C. § 1413(a)(1).

27. Pursuant to the IDEA, the District of Columbia set forth such policies and procedures in District of Columbia Official Code Title 38, Chapters 25, 25A, 25B, and 25C.

28. The IDEA requires the LEA to develop, review, and revise annually an individualized education program ("IEP") enabling each child with a disability in the LEA to receive a FAPE. 20 U.S.C. § 1412(a)(4); 34 C.F.R. § 300.112 (Westlaw current through 2020).

29. Among other things, the IEP must include "a statement of the child's present levels of academic achievement and functional performance," "a statement of measurable annual goals," "a description of how the child's progress toward meeting the annual goals . . . will be measured," "a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child," and "an explanation to the extent, if any, to which the child will not participate with nondisabled children." 20 U.S.C. § 1414(d)(1)(A)(i); *see* 34 C.F.R. § 300.320 (Westlaw current through 2019).

30. The LEA must convene an IEP meeting at least annually to review the IEP "to determine whether the annual goals for the child are being achieved" and revise the IEP to address "[a]ny lack of expected progress towards the annual goals," "[t]he results of any reevaluation," "[i]nformation about the child provided to, or by, the parents," "[t]he child's anticipated needs," and "[o]ther matters." 34 C.F.R. § 300.324(b) (Westlaw current through 2019).

31. The IEP Team must include a representative of the public agency ("LEA representative") who is "qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities," "knowledgeable about the general education curriculum," and "knowledgeable about the availability of resources of the public agency." 34 C.F.R. § 300.321(4) (Westlaw current through 2019).

32. The LEA must provide the parents with written notice ("Prior Written Notice" or "PWN") before the LEA proposes or refuses "to initiate or change the identification, evaluation, or educational placement of the child or provision of FAPE to the child." 20 U.S.C. § 1415(b)(3); 34 C.F.R. § 300.503(a)(Westlaw current through 2019). The IDEA requires that the PWN include certain information, including "a description of the action proposed or refused by the agency" and "an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action." 20 U.S.C. § 1415(c)(1).

33. The LEA "must conduct a full and individual initial evaluation . . . before the initial provision of special education and related services to a child with a disability." 34 C.F.R. § 300.301(a)(Westlaw Current through 2019). At least once every three (3) years, the LEA must ensure that a reevaluation of the child is conducted "[i]f the public agency determines

that the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a reevaluation" or "[i]f the child's parent or teacher requests a reevaluation." 34 C.F.R. § 300.303(a)(Westlaw Current through 2020).

34. The IDEA mandates that for children with behaviors that impede their education or others, schools should "consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior." 20 U.S.C 1414(d)(3)(B)(i); 34 C.F.R. § 300.324(a)(2(i)(Westlaw Current through 2020).

35. The IDEA mandates the State Education Agency ("SEA") develop and submit a plan to the federal government providing assurances to the Secretary that the State has in effect policies and procedures to ensure compliance with the IDEA in areas including FAPE, full educational opportunity, individualized education program, least restrictive environment, and procedural safeguards. 20 U.S.C. § 1412(a).

36. The IDEA allows prevailing parties to receive attorney's fees in IDEA actions. 20 U.S.C. § 1415(i)(3)(B).

37. D.C. Code Ann. § 38-2571.03(7)(A) explicitly states that a prevailing party in an IDEA matter may be awarded expert witness fees as part of its costs.

38.  A school district must comply with the contents of an IEP. *Wilson v. District of Columbia*, 770 F.Supp.2d 270, 275 (D.D.C.2011).   In the District of Columbia, "[w]here a school system fails to provide special education or related services, a student is entitled to compensatory education." *Holman v. District of Columbia*, 153 F. Supp. 3d 386, 390 (D.D.C. 2016), quoting *Walker v. District of Columbia*, 157 F.Supp.2d 11, 30 (D.D.C.2001) (citations omitted). "Compensatory education consists of prospective

services 'reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school should have supplied in the first place.'" *Holman, supra*, quoting *Reid ex rel. Reid v. Defendant of Columbia*, 401 F.3d 516, 524 (D.C.Cir.2005).

39. "The party challenging the hearing officer's ruling must 'at least take on the burden of persuading the court that the hearing officer was wrong,' and a court "upsetting the officer's decision must at least explain its basis for doing so." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C.Cir.1989). … And a decision "without reasoned and specific findings deserves little deference." *Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.C.Cir.1991) (internal quotations omitted)." *Id.*

## IV.   **THE PARTIES**

40. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

41. Plaintiff Deon Saunders ("Student," "DS," or "Plaintiff D.S.") is a citizen of the United States, who at the time of the violations alleged herein, resided with his mother, Cierra Saunders in Washington, D.C. At all times relevant herein, Student was, and continues to be a minor, having been born in the year 2010. At the time of the violations of law alleged herein, Student was eligible for special education and related services under the IDEA and District of Columbia law.

42. Plaintiff D.S. is also a qualified individual with a disability within the meaning of all applicable statutes, including Section 504 and the ADA.

43. Plaintiff Cierra Saunders ("Ms. Saunders," or "Plaintiff C.S." or "Parent ") is a citizen of the United States, who at the time of the violations of law alleged herein, resided in Washington, D.C.

11

44. Defendant District Of Columbia Public Schools ("Defendant DCPS," or "DCPS") is an LEA as that phrase is used in the IDEA, 20 U.S.C. § 1401 *et seq.*, and the Family Educational Rights and Privacy Act ("FERPA"), and as such receives financial assistance from the United States Department of Education and is responsible for providing a FAPE to disabled children, including Plaintiff D.S., attending its public school. Defendant DCPS is responsible for providing school children, including D.S., full and equal access to the public educational programs and activities offered by Defendant DCPS in accordance with federal law and the District of Columbia laws. As a local governmental unit, Defendant DCPS is a "person" as defined by 42 U.S.C. § 1983 (2000). Defendant DCPS is a recipient of federal funds within the meaning of 20 U.S.C. § 1681. Defendant DCPS is governed by the laws of the District of Columbia, the laws of the United States, and the Constitution of the United States in carrying out these duties and responsibilities.

45. Defendant District Of Columbia ("Defendant D.C." or "D.C.") supervises and oversees the Defendant DCPS and must supervise the LEA.   Defendant D.C. is a recipient of federal funds within the meaning of 20 U.S.C. § 1681. Defendant D.C. is governed by the laws of the District of Columbia, the laws of the United States, and the Constitution of the United States in carrying out these duties and responsibilities. Defendant D.C. is responsible for providing school children, including D.S., full and equal access to the public educational programs and activities offered by Defendant DCPS in accordance with federal law and the Defendant of Columbia laws. As a local governmental unit, Defendant D.C. is a "person" as defined by 42 U.S.C. § 1983 (2000). Defendant D.C. is a recipient of federal funds within the meaning of 20 U.S.C. § 1681. Defendant D.C. is

governed by the laws of the District of Columbia, the laws of the United States, and the Constitution of the United States in carrying out these duties and responsibilities.

## V.    PROCEDURAL HISTORY

46. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

47. On September 6, 2024, the Plaintiffs filed an Administrative Due Process Complaint against Defendants.

48. On or about September 27, 2024, the Plaintiffs filed an Amended Due Process Complaint against Defendants asserting the following grounds: (1) Parent and Student were denied a free appropriate public education ("FAPE") during the 2022-23 and 2023-24 school years in the following ways: a) failed to develop appropriate IEPs related to academics, functional, social-emotional and behavior during the 2022-23 and 2023-24 school years; b) failed to provide appropriate related services, supplementary aides, services, modifications, and accommodations; c) failed to develop appropriate BIPs; and d) failed to implement counseling services for D.S. during the 2022-23 school year and  (2) Defendants denied D.S. his procedural and substantive rights to a FAPE and discriminated against Plaintiff pursuant to Section 504 of the Rehabilitation Act ("Section 504," or "504") and the Americans with Disabilities Act ("ADA").

49. The underlying litigation (case no. 2024-0166) was assigned to Hearing Officer Peter B. Vaden, Esq. ("H.O." or "HO").

50. The Parties met for a resolution session meeting on September 17, 2024, but did not resolve the issues in dispute.

51. The Parties participated in a Prehearing Conference ("PHC") also on September 17, 2024, to discuss issues to be determined, hearing dates and other matters. The due process hearing dates were set for December 2, 4, 5, and 6, 2024.

52. On September 27, 2024, with leave of the H.O., Plaintiff C.S. filed an amendment to the DPC, restarting the timelines in the proceedings for the underlying administrative proceeding.

53. Upon information and belief, on or about September 27, 2024, Plaintiffs also filed a Motion for a Continuance with the H.O.

54. On October 7, 2024, H.O. granted the Motion for Continuance, which was not opposed by Defendants, to extend the final decision due date to December 20, 2024, in order to accommodate the parties' first mutually available dates to hold the due process hearing.

55. On October 23, 2024, H.O. provided a Pre-Hearing Order ("PHO") whereby he generated issues to be adjudicated, and relief sought as follows:

    a.  Whether DCPS denied Student a FAPE in the 2022-2023 and 2023-24 school years by providing IEPs on March 30, 2022 and March 29, 2023 which were inappropriate in that both IEPs failed to provide complete, appropriate and measurable goals for Math, Reading Written Expression and Emotional, Social and Behavioral Development; failed to provide appropriate amounts of specially designed instruction, failed to provide sufficient supplementary aides, devices, modifications and accommodations and identified an improper least restrictive environment for Student?

    b.  Whether DCPS denied Student a FAPE by failing to fully implement Student's IEP counseling services during the 2022-2023 school year?

    c.   Whether DCPS denied the Student a FAPE in the 2022-2023 and 2023-2024 school years by failing to conduct a functional behavior assessment (FBA) and develop appropriate Behavior Intervention Plans (BIPs)?

56. For relief, Plaintiffs requested that the H.O. award the Plaintiff D.S. compensatory education for the alleged denials of FAPE and award any further relief the H.O. deems just and proper.

57. Plaintiff also asserted claims under Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act, which were dismissed by the H.O. for lack of subject matter jurisdiction.

58. On November 18, 2024, Plaintiff C.S. filed a motion for issuance of a document subpoena to Defendant DCPS due to their failure to produce all of D.S. student records, including D.S. cumulative file and special education records after multiple written requests over two school years, to Plaintiff C.S. or her representatives.   Plaintiff C.S. also filed a second motion for a continuance. However, H.O. denied both motions which were unopposed by the Defendants.

59. On November 22, 2024, Plaintiff C.S. protested and filed a new due process complaint (case no. 2024-0227) again seeking to obtain Plaintiff D.S.'s cumulative file and student records that were not provided by Defendant DCPS to Plaintiff C.S. and moved to consolidate that case with case no. 2024-0166 in the undersigned matter which is the subject of the instant appeal.  However, Defendant DCPS opposed the consolidation motion and the H.O. denied the Plaintiffs' motion to consolidate by order issued on November 26, 2024.

60. In an intentional violation of the IDEA, Defendants have willfully refused to provide D.S. cumulative file and student records to Plaintiff C.S. over two school years with no consequences for Defendant DCPS's willful actions.

61. By pre-hearing motion, Plaintiff C.S. withdrew Issue three identified above prior to the due process hearing.

62. Plaintiffs did not waive any other claims outlined in the DPC.

63. The remaining two issues sought to be adjudicated by H.O. during the hearing were:

    a. Whether DCPS denied Student a FAPE in the 2022-2023 and 2023-24 school years by providing IEPs on March 30, 2022 and March 29, 2023 which were inappropriate in that both IEPs failed to provide complete, appropriate and measurable goals for Math, Reading Written Expression and Emotional, Social and Behavioral Development; failed to provide appropriate amounts of specially designed instruction, failed to provide sufficient supplementary aides, devices, modifications and accommodations and identified an improper least restrictive environment for Student?

    b. Whether DCPS denied Student a FAPE by failing to fully implement Student's IEP counseling services during the 2022-2023 school year?

64. For relief, Plaintiff C.S. sought that H.O. award Student compensatory education for the denials of FAPE and award any further relief he deemed just and proper.

65. The Hearing Officer Determination ("HOD" or "H.O. Decision") in case no. 2024-0166 was issued on December 14, 2024. (Exhibit 1)

66. H.O. made wrong and incorrect rulings during the hearing, as well as substantive errors and mistakes of law and facts in his HOD issued on December 14, 2024 which resulted in

severe harm and prejudice to Plaintiff C.S. and D.S., and also resulted in an underlying administrative due process proceeding and an HOD which was partially wrong, flawed and clearly erroneous related to the issue not found in Plaintiffs' favor.  Therefore, the HOD should be partially overturned by this Court on the issue in which H.O. did not find in Plaintiffs' favor.

## VI.    FACTUAL BACKGROUND

67. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68. D.S. has been determined eligible for special education and related services pursuant to the IDEA.

69. Plaintiff C.S. has not received specialized training in special education law and procedure. Plaintiff C.S. was not aware of the special education violations identified in the DPC until undersigned counsel explained her rights to her related to the Defendant DCPS's failure to provide Plaintiff D.S. with a free, appropriate public education ("FAPE").

70. Plaintiff C.S. has not received training on how to read, interpret and examine educational records, IEPs, IEP progress reports.

71. D.S.'s birth date is August 13, 2010, and he is 14 years old.

72. For the 2023-24 school year, D.S. was an eighth (8th) grade student at John Hayden Johnson Middle School in DCPS.

73. Upon information and belief, D.S. attended school in DCPS for grades 6, 7 and 8.

74. Upon information and belief, D.S. attended a public charter school prior to grade 6.

75. D.S. is entitled to receive special education and related services under Specific Learning Disability (SLD).

76. D.S. has been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and Attention Deficit Disorder (ADD).

77. D.S. is entitled to be provided behavioral support services by the Defendants.

78. D.S. was not provided all of the special education services outlined in his IEP during the 2022-23 school year.

79. For instance, D.S. was not provided behavior support services by Defendant DCPS during the 2022-23 school year.

80. D.S. has suffered regression as a result.

81. D.S. struggled academically during the 2022-23 and 2023-24 school years, but the Defendant DCPS failed to appropriately create the March 30, 2022, and March 29, 2023, IEPs and revise the IEPs to address his lack of appropriate progress.

82. D.S. is performing multiple grades below grade level in reading, math and written expression.

83. On March 29, 2023, Plaintiff C.S.'s special education advocate, Jessica Williams, requested Plaintiff D.S.'s educational records.

84. Upon information and belief, a few of the records requested were provided in the fourth quarter of the 2022-23 school year, including the March 30, 2022, IEP.

85. On or about February 20, 2024, C.S. requested a copy of all of D.S.'s education records in the Defendant's possession as she was not provided his complete educational file after the March 29, 2023, records request.

86.  Defendants have failed to provide C.S. with a copy of all of D.S. education records during the 2023-24 school year or thereafter.

87. On February 20, 2024, Petitioners requested Independent Educational Evaluations (IEEs) for D.S. from Defendants in the areas of Psychological, Educational, Speech-Language; Occupational Therapy, Motor, Autism, Assistive Technology, AAC Evaluation, Anxiety, Mental Health, Adaptive Behavior, Behavior, and Functional Behavior Assessment.

88.  Defendants denied Petitioner's Request for IEEs in the areas of Cognition, Education and Behavior for D.S. during the 2023-24 school year.

89.  On or about March 29, 2023, Petitioners requested IEEs for D.S. from the Defendant DCPS.

90.  Defendant DCPS failed to provide IEEs for D.S. during the 2022-23 and 2023-24 school years. Defendant DCPS did not file for due process to defend their evaluations after Plaintiff C.S. requested IEEs.

91. D.S. is performing below grade level in math.

92. D.S. was administered the Reading Inventory BOY assessment on or about January 2023. He scored a 565, which is equivalent to a 3rd grade level.  Therefore, D.S. performed below grade level expectations in reading during the 2022-23 school year and continued to perform below grade level during the 2023-24 school year.

93.  D.S. is performing below grade expectations in written expression. He can only compose simple sentences. D.S. is inconsistent when using capitalization and punctuation correctly. When he is given a writing prompt to a text dependent question, he often states he does not know what to write.

94. Plaintiff D.S. is often distracted and talks in class, which impedes his growth. When considering Plaintiff D.S.'s emotional, social and behavioral development, Plaintiff D.S. exhibits low frustration tolerance pertaining to academic tasks that he perceives as difficult. In addition, he has a history of demonstrating verbal and physical aggression to express his adverse emotions.

95. Defendant DCPS provided IEP goals aligned to grade level curriculum standards in the March 30, 2022, and March 29, 2023, IEPs. However, the grade level IEP goals do not address D.S.'s present levels of academic achievement and functional performance, which are several grades below grade level.

**Evaluations**

96. On March 7, 2018, Plaintiff D.S. was referred for a Confidential Psychological Re-Evaluation while attending Turner ES.

97. According to Plaintiff D.S.'s special education teacher, he performed far below grade level in reading, writing and math.

98. She also noted that Plaintiff D.S. works best when provided with one-on-one support. Upon information and belief, Plaintiff D.S. was not provided a dedicated aide by the District during the 2022-23 and 2023-24 school years.

99. Upon information and belief, Plaintiff D.S. has a low threshold for frustration when presented with challenging tasks.

100. Upon information and belief, Plaintiff D.S. also has difficulty remaining focused, controlling his impulses, is easily triggered and engages in attention seeking behaviors.

101. On March 7, 2018, the Defendant DCPS conducted the Adaptive Behavior Assessment System, Third Edition (ABAS-3) and Plaintiff D.S.'s scores are as follows:

20

**BRIEF-2 Summary of Scores**

| Scale/Index | Parent (P) Ms. Saunders Standard Score | Teacher 1 (T1) Ms. Hooks Standard Score | Teacher 2 (T2) Ms. Logan Standard Score | Teacher 3 (T3) Ms. Allen Standard Score |
|---|---|---|---|---|
| Inhibit | 61 Mildly Elevated | 66 Potentially Clinically Elevated | 78 Clinically Elevated | 75 Clinically Elevated |
| Self-Monitor | 68 Potentially Clinically Elevated | 61 Mildly Elevated | 76 Clinically Elevated | 61 Mildly Elevated |
| **Behavioral Regulation Index (BRI)** | **64 Mildly Elevated** | **66 Potentially Clinically Elevated** | **78 Clinically Elevated** | **72 Clinically Elevated** |
| Shift | 76 Clinically Elevated | 78 Clinically Elevated | 85 Clinically Elevated | 73 Clinically Elevated |

| | | | | |
|---|---|---|---|---|
| Emotional Control | 71 Clinically Elevated | 69 Potentially Clinically Elevated | 88 Clinically Elevated | 85 Clinically Elevated |
| **Emotion Regulation Index (ERI)** | **76 Clinically Elevated** | **75 Clinically Elevated** | **89 Clinically Elevated** | **82 Clinically Elevated** |
| Initiate | 63 Mildly Elevated | 73 Clinically Elevated | 73 Clinically Elevated | 73 Clinically Elevated |
| Working Memory | 72 Clinically Elevated | 79 Clinically Elevated | 79 Clinically Elevated | 76 Clinically Elevated |
| Plan/Organize | 71 Clinically Elevated | 77 Clinically Elevated | 79 Clinically Elevated | 67 Potentially Clinically Elevated |
| Task-Monitor | 69 Potentially Clinically Elevated | 73 Clinically Elevated | 73 Clinically Elevated | 70 Clinically Elevated |
| Organization of Materials | 67 Potentially Clinically Elevated | 75 Clinically Elevated | 81 Clinically Elevated | 65 Potentially Clinically Elevated |
| **Cognitive Regulation Index (CRI)** | **70 Clinically Elevated** | **80 Clinically Elevated** | **82 Clinically Elevated** | **74 Clinically Elevated** |
| **Global Executive Composite (GEC)** | **76 Clinically Elevated** | **78 Clinically Elevated** | **88 Clinically Elevated** | **78 Clinically Elevated** |

102.     On March 7, 2018, the Defendant DCPS conducted the Conners 3 Rating Scales

(Conners-3) and his scores were as follows:

| | Parent (P1)<br>Ms. Saunders | Teacher 1 (T1)<br>Ms. Hooks | Teacher 2 (T2)<br>Ms. Logan | Teacher 3 (T3)<br>Ms. Allen |
|---|---|---|---|---|
| **Domain** | **T Scores** | | | |
| Inattention | 84<br>Very Elevated | 75<br>Very Elevated | 75<br>Very Elevated | 73<br>Very Elevated |
| Hyperactivity/Impulsivity | ≤ 40<br>Low | 67<br>Elevated | 83<br>Very Elevated | 80<br>Very Elevated |
| Learning Problems (LP) | 68<br>Elevated | - | - | - |
| Executive Functioning (EF) | 79<br>Very Elevated | - | - | - |
| Learning Problems/Executive Functioning | - | 83<br>Very Elevated | 77<br>Very Elevated | 70<br>Very Elevated |
| Defiance/Aggression | 52<br>Average | ≥ 90<br>Very Elevated | ≥ 90<br>Very Elevated | ≥ 90<br>Very Elevated |
| Peer Relations | 45<br>Average | 50<br>Average | ≥ 90<br>Very Elevated | 67<br>Elevated |

103.    On March 7, 2018, the Defendant DCPS conducted the Wechsler Intelligence Scale for Children, Fifth Edition (WISC-V) and his scores are as follows:

| WISC-V Composite Score Summary | | | |
|---|---|---|---|
| Scale | Composite Score | Percentile Rank | Qualitative Description |
| Verbal Comprehension (VCI) | 50 | < 0.1 | Extremely Low |
| Visual Spatial (VSI) | 69 | 2 | Extremely Low |
| Fluid Reasoning (FRI) | 76 | 5 | Very Low |
| Working Memory (WMI) | 74 | 4 | Very Low |
| Processing Speed (PSI) | 92 | 30 | Average |
| **Full Scale (FSIQ)** | **63** | **1** | **Extremely Low** |

104.    On March 7, 2018, the Defendant DCPS conducted the Woodcock-Johnson IV Tests of Achievement Form A and Extended (WJ-IV ACH) and D.S.'s scores are as follows:

| Summary of WJ-IV Cluster Scores | | | |
|---|---|---|---|
| | Standard Score | Percentile Rank | Qualitative Description |
| Reading | 64 | 1 | Very Low |
| Basic Reading Skills | 65 | 1 | Very Low |
| Reading Fluency | 55 | 0.1 | Very Low |
| Broad Mathematics | 72 | 3 | Low |
| Broad Written Language | 63 | 1 | Very Low |
| **Broad Achievement** | **61** | **0.5** | **Very Low** |

| CLUSTER/Test | AE | GE | RPI | Proficiency | SS (68% Band) | SS | PR |
|---|---|---|---|---|---|---|---|
| READING | 5-8 | K.3 | 1/90 | Extremely Limited | 64 (62-66) | 64 | 1 |
| BROAD READING | 5-5 | K.0 | 0/90 | Extremely Limited | 62 (59-66) | 62 | 1 |
| BASIC READING SKILLS | 5-7 | K.2 | 1/90 | Extremely Limited | 65 (62-69) | 65 | 1 |
| READING FLUENCY | <2-7 | <K.0 | 0/90 | Extremely Limited | 55 (48-61) | 55 | 0.1 |
| MATHEMATICS | 6-2 | K.7 | 22/90 | Very Limited | 79 (76-82) | 79 | 8 |
| BROAD MATHEMATICS | 5-11 | K.5 | 10/90 | Very Limited | 72 (69-76) | 72 | 3 |
| MATH CALCULATION SKILLS | 6-0 | K.6 | 7/90 | Very Limited | 72 (68-77) | 72 | 3 |
| WRITTEN LANGUAGE | 5-9 | K.3 | 3/90 | Extremely Limited | 68 (63-73) | 68 | 2 |
| BROAD WRITTEN LANGUAGE | 5-7 | K.2 | 3/90 | Extremely Limited | 63 (58-69) | 63 | 1 |
| WRITTEN EXPRESSION | 5-8 | K.2 | 3/90 | Extremely Limited | 63 (54-71) | 63 | 1 |
| ACADEMIC SKILLS | 5-11 | K.5 | 3/90 | Extremely Limited | 70 (67-72) | 70 | 2 |
| ACADEMIC FLUENCY | 4-0 | <K.0 | 1/90 | Extremely Limited | 61 (55-67) | 61 | 0.4 |
| ACADEMIC APPLICATIONS | 5-9 | K.4 | 4/90 | Very Limited | 67 (63-71) | 67 | 1 |
| BRIEF ACHIEVEMENT | 5-8 | K.3 | 3/90 | Extremely Limited | 67 (64-69) | 67 | 1 |
| BROAD ACHIEVEMENT | 5-8 | K.2 | 2/90 | Extremely Limited | 61 (59-64) | 61 | 0.5 |
| | | | | | | | |
| Letter-Word Identification | 5-8 | K.3 | 0/90 | Extremely Limited | 65 (62-68) | 65 | 1 |
| Applied Problems | 5-9 | K.4 | 21/90 | Very Limited | 73 (68-78) | 73 | 4 |
| Spelling | 5-7 | K.2 | 4/90 | Very Limited | 67 (62-72) | 67 | 1 |
| Passage Comprehension | 5-9 | K.3 | 1/90 | Extremely Limited | 66 (62-70) | 66 | 1 |
| Calculation | 6-4 | K.9 | 23/90 | Very Limited | 81 (78-85) | 81 | 11 |
| Writing Samples | 5-10 | K.4 | 2/90 | Extremely Limited | 72 (65-79) | 72 | 3 |
| Word Attack | 5-6 | K.1 | 5/90 | Very Limited | 62 (52-71) | 62 | 0.5 |
| Oral Reading | <2-9 | <K.0 | 0/90 | Extremely Limited | 49 (40-59) | 49 | <0.1 |
| Sentence Reading Fluency | <4-1 | <K.0 | 0/90 | Extremely Limited | 67 (60-75) | 67 | 1 |
| Math Facts Fluency | 5-1 | <K.0 | 2/90 | Extremely Limited | 71 (64-77) | 71 | 3 |
| Sentence Writing Fluency | <5-7 | <K.2 | 4/90 | Very Limited | 62 (48-76) | 62 | 1 |

| | STANDARD SCORES | | | DISCREPANCY | | Interpretation at |
|---|---|---|---|---|---|---|
| VARIATIONS | Actual | Predicted | Difference | PR | SD | + or -1.50  SD (SEE) |
| Intra-Achievement [Extended] Variations | | | | | | |
| BASIC READING SKILLS | 65 | 72 | -7 | 18 | -0.90 | -- |

| VARIATIONS | STANDARD SCORES | | | DISCREPANCY | | Interpretation at |
| | Actual | Predicted | Difference | PR | SD | + or -1.50 SD (SEE) |
|---|---|---|---|---|---|---|
| *Intra-Achievement [Extended] Variations* | | | | | | |
| READING FLUENCY | 55 | 73 | -18 | 2 | -1.96 | Weakness |
| MATH CALCULATION SKILLS | 72 | 70 | 2 | 59 | +0.22 | -- |
| WRITTEN EXPRESSION | 63 | 71 | -8 | 20 | -0.86 | -- |
| Letter-Word Identification | 65 | 70 | -5 | 24 | -0.69 | -- |
| Applied Problems | 73 | 77 | -4 | 36 | -0.35 | -- |
| Spelling | 67 | 73 | -6 | 26 | -0.65 | -- |
| Passage Comprehension | 66 | 72 | -6 | 23 | -0.73 | -- |
| Calculation | 81 | 71 | 10 | 87 | +1.13 | -- |
| Writing Samples | 72 | 74 | -2 | 43 | -0.18 | -- |
| Word Attack | 62 | 76 | -14 | 7 | -1.47 | -- |
| Oral Reading | 49 | 77 | -28 | 0.4 | -2.64 | Weakness |
| Sentence Reading Fluency | 67 | 75 | -8 | 23 | -0.74 | -- |
| Math Facts Fluency | 71 | 74 | -3 | 40 | -0.25 | -- |
| Sentence Writing Fluency | 62 | 74 | -12 | 12 | -1.17 | -- |

| VARIATIONS | STANDARD SCORES | | | DISCREPANCY | | Interpretation at |
| | Actual | Predicted | Difference | PR | SD | + or -1.50 SD (SEE) |
|---|---|---|---|---|---|---|
| *Academic Skills/Academic Fluency/Academic Applications [Extended] Variations* | | | | | | |
| ACADEMIC SKILLS | 70 | 64 | 6 | 82 | +0.93 | -- |
| ACADEMIC FLUENCY | 61 | 72 | -11 | 9 | -1.34 | -- |
| ACADEMIC APPLICATIONS | 67 | 68 | -1 | 44 | -0.15 | -- |

**Woodcock-Johnson IV Tests of Achievement Form A and Extended Qualitative Observations**
Oral Reading: Errors involving mispronunciation (7), insertion (8), hesitation (1) and repetition (1) were observed

## Failure to Create Appropriate IEPs

105.    On March 30, 2022, the District held an IEP Annual Review meeting and developed an IEP for Plaintiff D.S. from March 30, 2022, through March 29, 2023 (Exhibit 4-March 30, 2022, IEP).

106.    Plaintiffs did not attend the March 30, 2022, IEP.  Upon information and belief, Plaintiffs did not receive a copy of the March 30, 2022, IEP until the last quarter of the 2022-23 school year.

107.    Prior to the development of the March 30, 2022, IEP, the Defendant DCPS was aware of the Plaintiff D.S. skill deficits in the areas of reading, written expression, math, executive functioning, attendance, behavior, and social emotional.  Defendant DCPS was

also aware of how those skill deficits negatively impacted Plaintiff D.S.'s educational performance.:

108.    The March 30, 2022, IEP provided the following PLAAFP related to Math:

| AREA OF CONCERN: Academic-Mathematics | |
|---|---|
| **Present Levels of Academic Achievement and Functional Performance:** | |
| Deon is a current 6th grade student at Johnson Middle School. When given the BOY i-Ready diagnostic on 9/20/21 he scored the following:<br><br>Overall Grade 1 (410)<br>Domain Placement<br>Number and Operations - Grade 3<br>Algebra and Algebraic Thinking - Grade 1<br>Measurement and Data - Grade 1<br>Geometry - Grade 1<br><br>He was given the same test on 2/2/22 during the MOY assessment period and scored the following:<br><br>Overall Grade 3 (434)<br>Domain Placement<br>Number and Operations - Grade 3<br>Algebra and Algebraic Thinking - Grade 5<br>Measurement and Data - Grade 2<br>Geometry - Grade 2<br><br>During the MOY, Deon raised his score by 24 points and 2 grade levels. This was a huge accomplishment for him and he was extremely excited about this growth. It gave him motivation to push himself even harder in math class. When focused, Deon is capable of grasping the skills and concepts taught. He requires the use of a calculator or facts chart for basic math computation. He works well when paired with a strong peer. Deon likes to answer questions in class and will help another student when needed. He is currently passing Math for 3rd quarter with a "B-". He failed quarter 1 with a "F" and passed quarter 2 with a "C-". | |
| **Description of how the student's disability affects the student's access to the general education curriculum:**<br>Deon's academic deficits and inability to remain focused impact his ability to retain and build upon information presented in the general education setting. | **Description of how the student's disability affects the student's progress in the general education curriculum:**<br>Deon's lack of foundational skills and limited number sense prohibit him from working on grade level skills and engaging independently in grade level instruction without special education supports. |

109.    The March 30, 2022, IEP provided the following Math goals:

| | |
|---|---|
| **Annual Goal 1:** | |
| By the end of the IEP, when given a one-step equation (e.g. $2x = 12$) with whole numbers, Deon will solve for the variable algebraically with inverse operations with 80% accuracy in 4 out of 5 trials. | |
| **Common Core Standards:** | |
| **6.EE.7** - Solve real-world and mathematical problems by writing and solving equations of the form $x + p = q$ and $px = q$ for cases in which p, q, and x are all nonnegative rational numbers. | |

| Baseline: Deon is currently performing on the 3rd grade level in math. He struggles with remembering the inverse operation and requires and anchor chart or reference points. | Anticipated Date of Achievement: 03/29/2023 | Evaluation Procedures and Schedule: *Work Samples / At Opportunity* *Practice and Drill / At Opportunity* |
|---|---|---|
| **Annual Goal 2:** By the end of the IEP, when given a multi-step real-life mathematical problem, involving whole numbers and decimals of positive or negative rational numbers, Deon will apply properties of operations to solve the problem, and assess the reasonableness of answers using mental computation or a calculator with 80% accuracy in 4 out of 5 trials. | | |
| **Common Core Standards:** **6.NS.5** - Understand that positive and negative numbers are used together to describe quantities having opposite directions or values (e.g., temperature above/below zero, elevation above/below sea level, credits/debits, positive/negative electric charge); use positive and negative numbers to represent quantities in real-world contexts, explaining the meaning of 0 in each situation. | | |
| Baseline: Deon is currently performing below grade level. He can apply some the rational numbers on a number line if they are whole numbers. | Anticipated Date of Achievement: 03/29/2023 | Evaluation Procedures and Schedule: *Work Samples / At Opportunity* *Practice and Drill / At Opportunity* |

110.     The math goals are not based on appropriate baseline data. The lack of appropriate baseline data impacted the IEP team's ability to craft measurable and realistic IEP goals.

111.     Despite D.S. being on a third (3rd) grade math level, the District provided IEP Math goals on a sixth (6th) grade level. These IEP math goals were not individually tailored to Plaintiff D.S.'s unique needs.

112.     During the 2022-23 school year, Plaintiff D.S. was at least three (3) grade levels behind in Math.

113.     The Defendant DCPS failed to provide math goals that were complete, appropriate, attainable, realistic, and measurable.

114.     The 2022-23 IEP provided the following PLAAFP related to Reading:

| AREA OF CONCERN: |
| --- |
| **Academic-Reading** |
| **Present Levels of Academic Achievement and Functional Performance:** |
| Deon is a current 6th grade student at Johnson Middle School. When given the Reading Inventory BOY assessment on 9/27/21, Deon scored a 347. This places him on the 1st grade reading level. |
| Deon is currently a fifth grade student at Turner ES. According to the most recent data analysis, Deon is performing below grade level expectations in reading. When given the Reading Inventory (RI) assessment in September 2020 he received a lexile level of BR. He was also given the Text, Reading and Comprehension (TRC) test. |
| Historical Data |
| In September 2018, he was able to read and comprehend a Level C text. He read the text with 94% accuracy and was able to retell the text in 2/3. When given the TRC test in January 2019, he was able to read and comprehend a Level E text. He read the text with 90% accuracy and 100% comprehension. Deon has shown much progress in the classroom on a day to day basis, and has been consistently participating in virtual learning. He is able to read books on his reading level independently. He can access Lexia and is no longer frustrated when he gets something wrong. He will ask for support when needed. He has also improve in reading and comprehending books during guided reading. He can access text one level above his reading level and can answer who, what, when and where questions with 70% accuracy. He recalls sight words more consistently and is motivated to improve his reading skills. |

| Description of how the student's disability affects the student's access to the general education curriculum: | Description of how the student's disability affects the student's progress in the general education curriculum: |
| --- | --- |
| Deon's disability classification of SLD affects his ability to access the general education curriculum. Deon would benefit from a multi- modality approach to reading. He should have access to audio books using websites like myON and Get Epic. He should be allowed to pick books that interest him. Deon should also have access to graphic organizers. This will help him work on specific reading skills (Main Idea and key details, BME, Sequencing and Compare/Contrast) in an organized way. Deon should be given extended time to complete assignments and he should be given frequent checks for understanding. | Deon's disability classification of SLD affects his ability to progress in the general education curriculum without the appropriate accommodations and modifications. |

115.    The March 30, 2022, IEP provided the following Reading goals:

**Annual Goal 1:**
By the end of the IEP, given an independent level literary text and teacher provided supports (e.g. a graphic organizer, sentence starters) Deon will determine the theme and 3 supporting details, accurately identifying theme and 2 out of 3 details in 3 out of 4 trials.

**Common Core Standards:**
**6.RL.2** - Determine a theme or central idea of a text and how it is conveyed through particular details; provide a summary of the text distinct from personal opinions or judgments.

| Baseline: | Anticipated Date of | Evaluation Procedures and Schedule: |
|---|---|---|
| Deon has difficulty identifying the moral theme of a story. an d identifying supporting details. | Achievement: 03/29/2023 | *Work Samples / At Opportunity* *Verbal Response / At Opportunity* |

**Annual Goal 2:**
By the end of the IEP, after reading a grade - level informational text and given a prompt to summarize the text, Deon will write a summary that includes 1 central idea and 3 supporting details on 3 out of 4 progress monitoring assessments.

**Common Core Standards:**
**6.RI.2** - Determine a central idea of a text and how it is conveyed through particular details; provide a summary of the text distinct from personal opinions or judgments.

| Baseline: | Anticipated Date of | Evaluation Procedures and Schedule: |
|---|---|---|
| Deon is able to frequently name main idea and give at least one detail from the text when he uses the strategy of annotating the text. | Achievement: 03/29/2023 | *Work Samples / At Opportunity* *Test / At Opportunity* |

116.     The reading goals are not based on appropriate baseline data. The lack of appropriate baseline data impacted the IEP team's ability to craft appropriate IEP goals.

117.     Despite D.S. being on a first (1st) grade reading level, the District provided IEP Reading goals on a sixth (6th) grade level. These IEP reading goals were not individually tailored to D.S.'s unique needs.

118.     During the 2022-23 school year, D.S. was at least five (5) grade levels behind in Reading.

119.     The Defendant DCPS failed to provide Reading goals that were complete, appropriate, and measurable.

120.     The March 30, 2022, IEP provided the following PLAAFP related to Written Expression:

| AREA OF CONCERN: |
|---|
| Academic-Written Expression |
| Present Levels of Academic Achievement and Functional Performance: |

> After reviewing work samples, Deon is performing below grade expectations in written expression. He can compose a simple sentence. He can state an opinion about a topic and support it with at least one detail. Deon is inconsistent when using capitalization and punctuation correctly.

121.    The March 30, 2022, IEP provided the following Written Expression goals:

**Annual Goal 1:**
By the end of the IEP, given an informational writing prompt, (e.g. written or verbally) and a paragraph template. Deon will write a 5 sentence paragraph that includes a topic sentence that responds to the prompt, 2 relevant examples that explain why they are important to the topic, and a concluding sentence in 4 of 5 informational writing prompts that meet teacher listed criteria (e.g. topic sentence, relevant details, explanation, concluding sentence)

**Common Core Standards:**
**6.W.2** - Write informative/explanatory texts to examine a topic and convey ideas, concepts, and information through the selection, organization, and analysis of relevant content.
**6.W.2.a** - Introduce a topic; organize ideas, concepts, and information, using strategies such as definition, classification, comparison/contrast, and cause/effect; include formatting (e.g., headings), graphics (e.g., charts, tables), and multimedia when useful to aiding comprehension.
**6.W.2.b** - Develop the topic with relevant facts, definitions, concrete details, quotations, or other information and examples.
**6.W.2.c** - Use appropriate transitions to clarify the relationships among ideas and concepts.
**6.W.2.d** - Use precise language and domain-specific vocabulary to inform about or explain the topic.
**6.W.2.f** - Provide a concluding statement or section that follows from the information or explanation presented.

| Baseline: | Anticipated Date of Achievement: | Evaluation Procedures and Schedule: |
|---|---|---|
| Deon write a topic sentence and at least one supporting detail with teacher support. | 03/29/2023 | *Work Samples / At Opportunity* *Verbal Response / At Opportunity* |

122.    The written expression goals are not based on appropriate baseline data. The lack of baseline data impacted the IEP team's ability to craft appropriate IEP goals.

123.    The Defendant DCPS failed to provide written expression goals that were complete, realistic, attainable, appropriate, and measurable.

124.    The March 30, 2022, IEP provided the following PLAAFP related to Emotional, Social, and Behavioral Development:

| AREA OF CONCERN: |
| --- |
| Emotional, Social, and Behavioral Development |

**Present Levels of Academic Achievement and Functional Performance:**

Deon Saunders is a 12-year-old African American male attending Johnson Middle School. He is currently in the sixth grade. Deon receives Special Education Services, with a disability classification of Specific Learning Disability (SLD). Deon currently receives specialized instruction in reading (5 hours a week, outside of the general education setting), mathematics (5 hours a week, outside of the general education setting), writing (5 hours a week, outside of the general education setting), and behavior support services (two hours a month (outside of the general education setting).

Deon presents himself as an easily engageable and respectful student. He has been observed laughing and playing with his peers, talking to his teacher. Deon has been able to build positive relationships with his peers and staff members. Deon is aware of his academic and social/emotional support and has been able to access them, as necessary.

According to teacher/staff reports, observations, and his most recent academic data, Deon continues to require support to stay engaged/on-task, has experienced challenges with completing academic assignments, and managing his negative emotions/interactions. On his most recent report card (term two), Deon received the following grades, Math-C. Language Arts-C-, Science-D+. World Geography & Culture-F, and Dance-C-.

To address his social/emotional needs and IEP prescription, Deon is currently participating in group counseling. During group, Deon is learning the Zones of Regulation curriculum which teaches self-management, self-awareness, and coping strategies. He has been able to participate in the lessons and respond to staff prompts when he is off task. Deon is also able to engage his peers, respond to questions and share his reasoning. Additionally, Deon seems to have a good understanding of the information shared. As he continues to progress through the curriculum, Deon should be able to manage his emotions by using various self-calming tools and strategies.

To assess his current social/emotional needs, SW administered the Strength and Difficulties Questionnaire to Deon in September 2021 and February 2022. The Strength and Difficulties Questionnaire (SDQ) is a brief behavioral screening questionnaire that is used to gain insight into the overall social, emotional, and behavioral functioning. According to his SDQ Deon endorsed the following ratings:

September 2021

Overall Stress-21 (20-40 is very high)

Emotional Distress-9 (7-10 is very high)

Behavioral Difficulties-3 (0-3 is close to average)

Hyperactivity and Concentration Difficulties-6 (6 is slightly raised)

Difficulties Getting Along with Other Children-3 (3 is slightly raised)

Kind and Helpful Behavior-10 (7-10 is close to average)

125.    The March 30, 2022, IEP provided the following Emotional, Social, and Behavioral

Development goals:

| **Annual Goal 1:** By 03/29/2023, during a classroom task, Deon will display (3) pre-taught on-task behaviors and use a self-monitoring checklist to stay on-task until task completion, for (4 out of 5) classroom tasks. | | |
|---|---|---|
| **Baseline:** According to the Strengths and Difficulties Questionnaire (SDQ) a score of 10 (9-10 is Very High) was endorsed for hyperactivity and concentration difficulties. | **Anticipated Date of Achievement:** 03/29/2023 | **Evaluation Procedures and Schedule:** *Observation / Each Nine Weeks* |
| **Annual Goal 2:** By 3/29/2023, during a moment of frustration, Deon will independently select (1) pre-taught calming strategy and use it within (30) seconds, for (4 out of 5) moments of frustration | | |
| **Baseline:** Deon continues to exhibits low frustration tolerance pertaining to academic tasks that he perceives as difficult. In addition, he has a history of demonstrating verbal and physical aggression to express his adverse emotions. | **Anticipated Date of Achievement:** 03/29/2023 | **Evaluation Procedures and Schedule:** *Observation / Each Nine Weeks* |

126.    The Emotional, Social, and Behavioral Development goals are not based on appropriate baseline data. The lack of baseline data impacted the IEP team's ability to craft measurable IEP goals.

127.    The Defendant DCPS failed to provide Emotional, Social, and Behavioral Development goals that were complete, realistic, attainable, appropriate, and measurable.

128.    The March 30, 2022, IEP provided Plaintiff D.S. the following specially designed instruction and Related Services:

**Special Education Services**

| Service | Setting | Begin Date | End Date | Time/Frequency |
|---|---|---|---|---|
| Reading | Outside General Education | 03/30/2022 | 03/29/2023 | 5 hr per wk |
| Mathematics | Outside General Education | 03/30/2022 | 03/29/2023 | 5 hr per wk |
| Written Expression | Outside General Education | 03/30/2022 | 03/29/2023 | 5 hr per wk |

**Related Services**

| Service | Setting | Begin Date | End Date | Time/Frequency |
|---|---|---|---|---|
| Behavioral Support Services | Outside General Education | 03/30/2022 | 03/29/2023 | 120 min per mon |

**Other Classroom Aids and Services**

*This section documents aids, services, and other supports that are only provided in regular education classes or other education-related settings to enable children with disabilities to access the curriculum and are not accommodations provided in the Statewide-Assessment.*

read alouds, manipulatives, differentiated instruction

**DEDICATED AIDES**

Student requires the support of a dedicated aide:  [  ] Yes [X] No

129.     Despite having significant academic, social, and functional deficits, the District failed to provide an appropriate amount of specially designed instruction to allow D.S. to make appropriate progress.

130.     The March 30, 2022, IEP provided the following accommodations, modifications, or                                                    supplementary                                                    aides:

| Classroom Accommodations | Statewide or Alternate Assessment Accommodations |
|---|---|
| *Presentation* | *Presentation* |
| Clarification/ Repetition of Directions<br>Due to his distractability Deon requires repetion of directions and reprat back to the teacher, | Clarification/ Repetition of Directions |
| Read Aloud for Non-ELA/Literacy Assessments<br>Due to his distractability Deon requires read aloud for non literacy assessments. | Read Aloud for Non-ELA/Literacy Assessments |
| Read Aloud for ELA/Literacy Assessments | Read Aloud for ELA/Literacy Assessments |
| Redirect Student to Test<br>Due to his distractability Deon requires redirection on a consistent gasis. | Redirect Student to Test |
| *Response* | *Response* |
| Calculation Device on Non-Calculator Sections<br>students skills are below grade level | Calculation Device on Non-Calculator Sections |
| Human Scribe, Speech-to-Text, Human Signer, or External Assistive Technology for Responses on Non-ELA/Literacy Assessments<br>Deon can be offered writing assistance during tests, if he presents as tired or frustrated to best sustain his attention to the task. | Human Scribe, Speech-to-Text, Human Signer, or External Assistive Technology for Responses on Non-ELA/Literacy Assessments<br>Deon can be offered writing assistance during tests, if he presents as tired or frustrated to best sustain his attention to the task. |
| Human Scribe, Speech-to-Text, Human Signer, or External Assistive Technology for Constructed Responses on ELA/Literacy Assessments<br>Deon is performing significantly below grade level expectations in writing. | Human Scribe, Speech-to-Text, Human Signer, or External Assistive Technology for Constructed Responses on ELA/Literacy Assessments<br>Deon is performing significantly below grade level expectations in writing. |
| *Setting* | *Setting* |
| Preferential seating | Preferential seating |
| Location with minimal distractions | Location with minimal distractions |
| Small group testing | Small group testing |
| *Timing and Scheduling* | *Timing and Scheduling* |
| Extended Time<br>Due to his distractability Deon requires extended time. | Extended Time |
| Flexibility in Scheduling | Flexibility in Scheduling |
| Frequent Breaks<br>Due to his distractability Deon requires frequent breaks to sustain attention to a task. | Frequent Breaks |

131.    The Defendant DCPS failed to provide sufficient supplementary aides, services, modifications, and accommodations to allow D.S. to make appropriate progress.

132.    The March 30, 2022, IEP provided the following least restrictive environment:

| Service | Time/Frequency | Reason services cannot be provided in general education setting |
|---|---|---|
| Reading | 5 hr per wk | Deon needs intensive, small group instruction in order to grasp the general education curriculum. |
| Mathematics | 5 hr per wk | Deon needs intensive, small group instruction in order to grasp the general education curriculum. |
| Written Expression | 5 hr per wk | Deon needs intensive, small group instruction in order to grasp the general education curriculum. |
| Behavioral Support Services | 120 min per mon | Deon requires small group instruction outside of the general education setting to address his moderate difficulties with sustaining his attention and regulating his emotions. |

**Describe supplemental supports and services that were previously attempted in a general education setting.**
One on one attention, small group instruction, frequent breaks, support from peers and partner work.

**Possible harmful effects that the proposed placement will have on the student or on the quality of the services the student Receives include**
The team has deemed there will be no harmful effects on the student.

133.    The least restrictive environment presented in the March 29, 2023, IEP failed to account for his individualized needs and lack of progress.

134.    On March 29, 2023, the District held an IEP Amendment meeting and developed an IEP for D.S. from March 29, 2023, through March 28, 2024 (2023-24 IEP).

135.    Plaintiff C.S. attended the March 29, 2023, IEP meeting. (Exhibit 5-March 29, 2023, IEP).

136.    The IEP goals in the March 30, 2022, IEP and March 30, 2023, IEP were either the same or very similar as reflected below:

**Mathematics Goals:**

**March 30, 2022, IEP:**

a.    Goal 1 focused on solving one-step equations with whole numbers using inverse operations3. The Common Core Standard was 6.EE.73.

b. ∘Goal 2 aimed at solving multi-step real-life mathematical problems involving whole numbers and decimals of positive or negative rational numbers, applying properties of operations, and assessing the reasonableness of answers. The Common Core Standard was 6.NS.54.

**March 29, 2023, IEP:**

c. Goal 1 of the March 29, 2023, IEP also focused on solving one-step equations with whole numbers algebraically using inverse operations in the same way as the March 30, 2022, IEP. The Common Core Standard is the same: 6.EE.75.

d. Goal 2 for the March 29, 2023, targeted multi-step real-life mathematical problems involving whole numbers and decimals of positive or negative rational numbers, applying properties of operations to solve, and assessing the reasonableness of answers using mental computation or a calculator as did Goal 2 of the March 30, 2022, IEP. The Common Core Standard is also the same: 6.NS.56.

**Written Expression Goals:**

**March 30, 2022, IEP:**

e. The written expression goal was for Plaintiff D.S. to write a five-sentence paragraph with a topic sentence, two relevant examples with explanations, and a concluding sentence in response to an informational writing prompt, using a paragraph template. The Common Core Standards were 6.W.2, 6.W.2.a, 6.W.2.b, 6.W.2.c, 6.W.2.d, and 6.W.2.f12.

**March 29, 2023, IEP:**

    f.   The March 29, 2023, IEP goal increased the expectation to a seven-sentence paragraph with a topic sentence, two relevant examples with explanations, and a concluding sentence, given a writing prompt, paragraph template, and mechanical checklist. The Common Core Standards are 7.W.4, 7.W.1, and 7.W.1.c13.

**Emotional, Social, and Behavioral Development Goals:**

**March 30, 2022, IEP:**

    g.   Goal 1 focused on displaying three pre-taught on-task behaviors and using a self-monitoring checklist until task completion during a classroom task.

    h.   Goal 2 aimed for Deon to independently select and use one pre-taught calming strategy within 30 seconds during a moment of frustration.

**March 29, 2023, IEP:**

    i.   Goal 1 remained the same as the March 30, 2023, targeting the display of three pre-taught on-task behaviors and the use of a self-monitoring checklist until task completion during a classroom task.

    j.   Goal 2 also remained the same, focusing on independently selecting and using one pre-taught calming strategy within 30 seconds during a moment of frustration.

137.    As noted above, the March 29, 2023, IEP goals were very similar or the same as the IEP goals in the March 30, 2023, IEP. None of the IEP goals in the March 30, 2023, IEP were mastered.

138.    The Math goals are not based on appropriate baseline data. The lack of appropriate baseline data impacted the IEP team's ability to craft measurable IEP goals.

139.    The Defendant DCPS repeating IEP goals and D.S. 's lack of progress towards an

IEP goal indicates that the IEP goals and IEP are not appropriate.

140.    An IEP goal should be drafted to be achieved in one year, but D.S.'s lack of

progress forces the Defendant DCPS to repeat IEP goals.

141.    The Defendant DCPS noted the following PLAAFP for math for the March 29,

2023, IEP:

**Present Levels of Academic Achievement and Functional Performance:**
[D.S.] is a current 7th grade student at Johnson Middle School. When given the MOY i-Ready diagnostic on 1/09/23
he scored the following:

Grade 3 (436)
Can Do & Next Steps
Number and Operations -Grade 3
Algebra and Algebraic Thinking -Grade 2
Measurement and Data -Grade 4
Geometry -Grade 3
        During the MOY, Deon raised his score by 12 points from the BOY score. He is currently passing

Math for 3rd quarter with a "C".

| Description of how the student's disability affects the stu- dent's access to the general education curriculum: | Description of how the student's disability affects the stu-dent's progress in the general education curriculum: |
|---|---|
| [D.S.]'s academic deficits and inability to remain focused impact his ability to retain and build upon information presented in the general education setting. | [D.S.]'s lack of foundational skills and limited number sense prohibit him from working on grade level skills and engaging independently in grade level instruction without special education supports. |

Exhibit 5 at 3.

142.    Despite D.S. being on a third (3rd) grade Math level, the Defendant DCPS provided

repeating IEP Math goals on a sixth (6th) grade level. These repeating IEP Math goals were

not individually tailored to D.S.'s unique needs.

143.    Upon information and belief, during the 2023-24 school year, D.S. was at least four

(4) grade levels behind in Math.

144.    The Defendant DCPS failed to provide Math goals that were complete, realistic,

attainable, appropriate, and measurable.

145.    The 2023-24 IEP provided the following PLAAFP related to Reading:

| Present Levels of Academic Achievement and Functional Performance: | |
|---|---|
| [D.S.] is a current 7th grade student at Johnson Middle School. When given the Reading Inventory BOY assessment on September 2022, Deon scored a 412. That placed him on the 1st grade reading level. January 2023 he scored 565 which is equivalent to a third grade level. He grew According to the most recent data analysis, [D.S.] is performing below grade level expectations in reading. In class [D.S.] is often distracted and talking which impedes his growth. Reading comprehension is an area of strength. Sentence structure and the writing process could use some improvements. [D.S.] often forgets the articles in his sentences. | |
| **Description of how the student's disability affects the stu- dent's access to the general education curriculum:** [D.S.]'s disability classification of SLD affects his abil- ity to access the general education curriculum. [D.S.] would benefit from a multi- modality approach to read- ing. He should have access to audio books using web-sites like myON and Get Epic. He should be allowed to pick books that interest him. [D.S.] should also have access to graphic organizers. This will help him work on specific reading skills on (Main Idea and key details, BME, Sequencing and Compare/Contrast) in an organized way. [D.S.] should be given extended time to complete assignments and he should be given frequent checks for understanding. | **Description of how the student's disability affects the stu- dent's progress in the general education curriculum:** [D.S.]'s disability classification of SLD affects his ability to progress in the general education curriculum without the appropriate accommodations and modifications. |

Exhibit 5 at 4.

146.    The 2023-24 IEP provided the following Reading goals:

**Annual Goal 1:**
By the end of the IEP, after independently reading a grade-level literary text Deon will summarize the text by retelling (4) key events from the text in order, in writing, for (7 out of 8) rubric points, on (3 out of 4) progress monitoring assessments.

**Common Core Standards:**
**7.RL.1** - Cite several pieces of textual evidence to support analysis of what the text says explicitly as well as inferences drawn from the text.
**7.RL.2** - Determine a theme or central idea of a text and analyze its development over the course of the text; provide an objective summary of the text.

| Baseline: | Anticipated Date of Achievement: | Evaluation Procedures and Schedule: |
|---|---|---|
| Deon has difficulty identifying the main idea and moral theme of a story. and identifying supporting details. | 03/28/2024 | *Work Samples / At Opportunity* *Verbal Response / At Opportunity* |

**Annual Goal 2:**
By the end of the IEP, given a grade-level informational text with a highlighted academic word and a written prompt to define the word as it is used in the text, Deon will write the meaning of the word, for (4 out of 5) words, on (3 out of 4) progress monitoring assessments.

**Common Core Standards:**
**7.L.5** - Demonstrate understanding of figurative language, word relationships, and nuances in word meanings.
**7.L.4** - Determine or clarify the meaning of unknown and multiple-meaning words and phrases based on grade 7 reading and content, choosing flexibly from a range of strategies.
**7.L.5.b** - Use the relationship between particular words (e.g., synonym/antonym, analogy) to better understand each of the words.
**7.L.6** - Acquire and use accurately grade-appropriate general academic and domain-specific words and phrases; gather vocabulary knowledge when considering a word or phrase important to comprehension or expression.
**7.L.6** - Acquire and use accurately grade-appropriate general academic and domain-specific words and phrases; gather vocabulary knowledge when considering a word or phrase important to comprehension or expression.
**7.L.4.a** - Use context (e.g., the overall meaning of a sentence or paragraph; a word s position or function in a sentence) as a clue to the meaning of a word or phrase.

| Baseline: | Anticipated Date of Achievement: | Evaluation Procedures and Schedule: |
|---|---|---|
| Deon is reading more than two levels below current grade level. Deon can benefit from expanding his vocabulary to support comprehension. | 03/28/2024 | *Work Samples / At Opportunity* *Test / At Opportunity* |

147.    The reading goals are not based on appropriate baseline data. The lack of appropriate baseline data impacted the IEP team's ability to craft measurable, attainable and appropriate IEP goals.

148.    Despite D.S. being on a third (3rd) grade reading level, the Defendant DCPS provided IEP reading goals on a seventh (7th) grade level. These IEP goals were not individually tailored to D.S.'s unique needs.

149.    During the 2023-24 school year, D.S. was at least four (4) grade levels behind in Reading.

150.     The Defendant DCPS failed to provide reading goals that were complete, appropriate, realistic, attainable, and measurable.

151.     The 2023-24 IEP provided the following PLAAFP related to Written Expression:

**Present Levels of Academic Achievement and Functional Performance:**
After reviewing work samples, [D.S.] is performing below grade expectations in written expression. He can compose a simple sentence. He can state an opinion about a topic and support it with at least one detail. [D.S.] is inconsistent when using capitalization and punctuation correctly. When he is given a writing prompt to a text dependent question he often states he does not know what to write. [D.S.] has been given 4 free writes with a graphic organizer to support in small group he has not completed any of them.

| **Description of how the student's disability affects the stu-dent's access to the general education curriculum:** | **Description of how the student's disability affects the stu-dent's progress in the general education curriculum:** |
| --- | --- |
| [D.S.]'s disability classification of SLD affects his ability to access the general education curriculum. [D.S.] would benefit from accommodations and modification to the curriculum in order to have some success. [D.S.] should have access to a working word wall. This should help him with his spelling when writing and reduce frustrations. He should also have a partially completed paragraph template when he is completing writing assignments. Deon will also need extended time to complete assignments as well as frequent checks for understand to ensure that he understands what he should be doing. | [D.S.]'s disability classification of SLD affects his ability to progress in the general education curriculum without the appropriate accommodations and modifications. |

Exhibit 5 at 5-6.

152.     The Defendant DCPS for the most part repeated D.S. 's written expression PLAAFP from the 2022-23 IEP.

153.     The 2023-24 IEP provided the following written expression goal:

| **Annual Goal 1:** | | |
| --- | --- | --- |
| By the end of the IEP, given a writing prompt, a paragraph template and a mechanical checklist. Deon will write a 7 sentence paragraph that includes a topic sentence that responds to the prompt, 2 relevant examples that explain why they are important to the topic, and a concluding sentence in 4 of 5 informational writing prompts that meet teacher listed criteria (e.g. topic sentence, relevant details, explanation, concluding sentence) | | |
| **Common Core Standards:**<br>**7.W.4** - Produce clear and coherent writing in which the development, organization, and style are appropriate to task, purpose, and audience. (Grade-specific expectations for writing types are defined in standards 1 3 above.)<br>**7.W.1** - Write arguments to support claims with clear reasons and relevant evidence.<br>**7.W.1.c** - Use words, phrases, and clauses to create cohesion and clarify the relationships among claim(s), reasons, and evidence. | | |
| **Baseline:**<br>Deon write a topic sentence and at least one supporting detail with teacher support. | **Anticipated Date of Achievement:**<br>03/28/2024 | **Evaluation Procedures and Schedule:**<br>*Work Samples / At Opportunity*<br>*Verbal Response / At Opportunity* |

154.    The written expression goals are not based on appropriate baseline data. The lack of appropriate baseline data impacted the IEP team's ability to craft measurable, realistic, attainable IEP goals.

155.    Despite D.S. being below grade level expectation, the Defendant DCPS provided an IEP written expression goal on a seventh (7th) grade level. The written expression IEP goal was not individually tailored to D.S.'s unique needs.

156.    The Defendant DCPS failed to provide a Written Expression goal that was complete, realistic, attainable, appropriate, and measurable.  Actually, Plaintiff D.S. was still only able to write one simple sentence but had a seventh-grade level IEP goal requiring him to write seven sentences.

157.    The 2023-24 IEP provided the following PLAAFP related to Emotional, Social and Behavioral Development:

**Present Levels of Academic Achievement and Functional Performance:**
[D.S.] is a 12-year-old African American male attending Johnson Middle School. He is currently in the sixth grade. Deon receives Special Education Services, with a disability classification of Specific Learning Disability (SLD). [D.S.] currently receives 15 hours of specialized instruction weekly and 120 minutes per month of behavior support services.

To date, Deon has missed 7 days of academic instructions according to DCPS Aspen database. Additionally, he received the following grades for term 2: a "B" in English, a "C" in World History, Math and Dance and an "F" in Science and Coding. Lastly, according to the Student Behavior Tracker (SBT), [D.S.] has zero suspensions.

[D.S.] presents as an inquisitive student that enjoys chatting with adults on various topics. He is vocal about things, people and events he dislikes. [D.S.] is equally passionate about things he loves, such as his family. During a behavior support session, [D.S.] stated if he had one wish it would be to have a home big enough for his entire family to live in together. He likes to spending his free time with family and friends.

To assess his current social/emotional needs, the Strength and Difficulties Questionnaire (SDQ) was administered to Deon on March 28, 2023. The SDQ is a brief behavioral screening questionnaire that is used to gain insight into the overall social, emotional, and behavioral functioning.

158.     The 2023-24 IEP provided the following Emotional, Social and Behavioral

Development goals:

| Annual Goal 1: | | |
|---|---|---|
| By 03/29/2023, during a classroom task, Deon will display (3) pre-taught on-task behaviors and use a self-monitoring checklist to stay on-task until task completion, for (4 out of 5) classroom tasks. | | |
| **Baseline:** According to the Strengths and Difficulties Questionnaire (SDQ) a score of 10 (9-10 is Very High) was endorsed for hyperactivity and concentration difficulties. | **Anticipated Date of Achievement:** 03/28/2024 | **Evaluation Procedures and Schedule:** *Observation / Each Nine Weeks* |
| Annual Goal 2: | | |
| By 3/29/2023, during a moment of frustration, Deon will independently select (1) pre-taught calming strategy and use it within (30) seconds, for (4 out of 5) moments of frustration | | |
| **Baseline:** Deon continues to exhibits low frustration tolerance pertaining to academic tasks that he perceives as difficult. In addition, he has a history of demonstrating verbal and physical aggression to express his adverse emotions. | **Anticipated Date of Achievement:** 03/28/2024 | **Evaluation Procedures and Schedule:** *Observation / Each Nine Weeks* |

159.     The Emotional, Social and Behavioral Development goals are not based on

appropriate baseline data. The lack of appropriate baseline data impacted the IEP team's

ability to craft measurable IEP goals.

160.     The 2023-24 IEP repeated the Emotional, Social and Behavioral Development

PLAAFP and IEP goals from the 2022-23 IEP.

161.     The District repeating IEP goals and D.S. 's lack of progress towards an IEP goal

indicates that the IEP goals and IEP are not appropriate.

162.     An IEP goal should be drafted to be achieved in one year, but D.S.'s lack of

progress forces the District to repeat IEP goals.

163.     The District failed to provide Emotional, Social and Behavioral Development goals

that were complete, appropriate, and measurable.

164.     The 2023-24 IEP provided Plaintiff D.S. the same SDI and Related Services as the

2022-23 IEP.

165.    The 2023-24 IEP provided the same accommodations, modifications, and

supplementary aides as the 2022-23 IEP despite his lack of appropriate progress in reading,

written expression, math, and social-emotional/behavior.

166.    The 2023-24 IEP provided the same amount of specially designed instruction as the

2022-23 IEP despite his lack of appropriate progress in reading, written expression, math,

and social-emotional/behavior.

167.    The Defendant DCPS changed the location of his specially designed instruction

from outside general education in the March 30, 2022, IEP to inside general education for

the March 29, 2023, IEP despite his lack of appropriate progress in reading, written

expression, math, and social-emotional/behavior.

168.    The Defendant DCPS's IEPs failed to address all of D.S.'s individualized needs.

Despite D.S. 's deficits in reading, written expression, math, executive functioning, and

social-emotional, the Defendant DCPS provided D.S. with the same amount of his special

education and related services year after year.

169.    D.S. has regressed as a consequence of the March 30, 2022, IEP and March 29,

2023, IEP and the District's failure to timely revise his goals as necessary to address his

significant regression.

170.    The Defendant DCPS determined that D.S. did not qualify for extended school year

("ESY") services for the 2021-22 and 2022-23 school years.

171.    Upon information and belief, the Defendant DCPS did not evaluate all relevant data

when it denied D.S. ESY for the 2021-22, and 2022-23 school years.

172.    Upon information and belief, the Defendant DCPS did not appropriately discuss

D.S.'s regression or benefits regarding ESY for the 2021-22 and 2022-23 school years.

173.     The Defendant DCPS's failure to provide ESY services and supports contributed to D.S.'s loss of skills being substantial.

### Due Process Hearing

174.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

175.     As noted above, there were only two issues identified to be adjudicated in the underlying administrative due process hearing.

176.     Plaintiffs prevailed on the sole issue that Defendant DCPS denied Plaintiff D.S. a FAPE by failing to fully implement the Plaintiff D.S.'s IEP counseling services during the 2022-23 school year.

177.     Prior to the due process hearing, Plaintiffs and her representatives requested the Plaintiff D.S.'s cumulative file and special education records multiple times, unsuccessfully from Defendant DCPS.  Defendant DCPS refused to produce Plaintiff D.S.'s cumulative file and special education records which prejudiced Plaintiffs.

178.     Prior to the due process hearing, Plaintiffs sought to subpoena Plaintiff D.S.'s cumulative file and special education records from Defendant DCPS. However, the subpoena was denied by H.O. which prejudiced Plaintiff.

179.     The H.O. required the parties to provide all exhibits and evaluations five days prior to the due process hearing.

180.     Five days prior to the administrative due process hearing, Plaintiffs filed their five-day disclosures.

181.    Five days prior to the due process hearing, Defendant DCPS provided new and unknown records related to Plaintiff D.S. in Defendant DCPS's five-day disclosures to the administrative Tribunal in the underlying case which prejudiced Plaintiff.

182.    Upon receipt of the filing, Plaintiffs then sought to supplement Plaintiffs' five-day disclosures with new and unknown records obtained from Defendant DCPS's five-day disclosures. H.O. disallowed Plaintiffs from supplementing their five-day disclosures which prejudiced Plaintiffs.

183.    Plaintiffs were unable to present all relevant records and exhibits as Defendant DCPS refused to comply with the procedural requirements pursuant to the IDEA related to the disclosure of records to parents.

184.    H.O. allowed Defendant DCPS to put on its case in chief and to reference and admit into evidence records that were never produced by Defendant DCPS to Plaintiffs.

185.    Prior to the hearing, Plaintiff submitted an expert report reflecting the need for compensatory service hours for the student in excess of 1880 hours. (Exhibit 3 at 12).

186.    Plaintiff D.S. testified credibly about his struggles and deficits.

187.    During the hearing D.S. testified about his struggles in reading, written expression, and math.  D.S. specifically discussed his ongoing difficulties during his three years in middle school with the Defendant.

188.    During the due process hearing, D.S. testified that he did not feel confident enough to ask the teacher for help in front of other students when he did not understand something in class.

189.     D.S. testified during the hearing that when he got upset in class or did not understand something, his teachers often did nothing, let him be frustrated, or told him to leave the classroom.

190.     D.S. testified being told to leave the classroom made him feel more frustrated because he needed help.

191.     D.S. testified his teachers at Johnson Middle School did not repeat directions for assignments.

192.     D.S. testified that he still struggles with math, finding it "frustrating" and the equations "hard."

193.     D.S. testified he would be okay getting additional help from a tutor for reading, writing, and math.

194.     During the due process hearing, the evidence demonstrated that D.S. often lost materials, forgot his work, became frustrated, and would occasionally engage in avoidant behaviors.

195.     During the due process hearing, the evidence demonstrated that D.S. performed well below grade level in reading, writing, and math.

196.     During the due process hearing, the evidence indicated that D.S. was in need of intensive supports for behavioral and social emotional concerns.

197.     During the due process hearing, the evidence indicated that D.S. had difficulties with executive functioning, such as poor memory and organization skills.

198.     During the due process hearing, C.S. testified that D.S. needed extra support to understand assignments in the classroom.

199.    Plaintiff C.S. testified that she attended IEP meetings in 7th and 8th grade. Plaintiff C.S. never testified that she specifically attended the March 30, 2022, IEP.

200.    Plaintiff C.S. testified that D.S. struggles with academics and that his behavior impacts his ability to make progress.

201.    Plaintiff C.S. testified that D.S. struggles with communication.

202.    Plaintiff C.S. testified that D.S. was not provided behavior support services and that 720 minutes of behavior support services were not made up to him.  She also testified that she did not reject the 720 minutes of behavior support services for D.S., and she believes the student would have benefited from these services.

203.    While providing testimony, Plaintiff C.S. recounted an incident with D.S. science teacher who embarrassed him in front of the class about his reading level. This incident had a "big impact" on D.S., making him not want to trust teachers in the building.

204.    Plaintiff C.S. testified that teachers would benefit from teacher training on how to better support D.S.  She suggested more training, specifically on understanding a child's needs based on their IEP.

205.    During the hearing, Plaintiff C.S. testified that D.S. would benefit from compensatory services in reading, writing, math, and counseling to make up for services not provided in Johnson Middle School.

206.    Plaintiff C.S. testified further that she agreed with the recommendations for compensatory services for D.S. made by Ms. Holmes in her expert report. (Exhibit 3 at 12).

207.    Plaintiff C.S. testified it would be helpful for D.S.'s teachers to post schedules of work to be done. She also thought an assignment notebook provided and updated by

teachers would help D.S. as seeing assignments is better than just hearing them verbally. Additionally, she opined that Plaintiff D.S. would benefit from an extra set of textbooks to use at home.

208.    Plaintiff C.S. requested the hearing officer to make an award of compensatory services for D.S. based on the hearing and Ms. Holmes' expert report.

209.    Plaintiff C.S.'s testimony focused on the challenges D.S. faced in middle school, the lack of consistent and appropriate support, the impact of specific incidents, and her opinions on what additional measures and compensatory services would benefit her son.

210.    As part of Plaintiffs' five-day disclosures, Plaintiffs provided the names of three expert witnesses-Dr. Rebecca Felton, Ms. Jennifer Holmes, and Ms. Jessica Williams.

211.    Dr. Rebecca Felton, a special education expert with over sixty years of experience, testified that Plaintiff D.S had severe deficits in basic word-level reading and writing, including spelling. (Exhibit 6-Dr. Rebecca Felton's Curriculum Vitae).

212.    Dr. Felton testified that testing from the second and fifth grades pointed to these severe deficits, with Plaintiff D.S. still at the very beginning of literacy acquisition at the word level.

213.    Dr. Felton testified that Plaintiff D.S. presented with a word-level specific reading disability, also known as dyslexia. Dr. Felton noted the consistent description of Plaintiff D.S. 's difficulties by testers and teachers aligning with a diagnosis of dyslexia.

214.    Dr. Felton further testified that Plaintiff D.S. had significant impairments in letter word identification.  Dr. Felton explained that this refers to the ability to accurately read words, a skill in which Plaintiff D.S. showed a severe deficit based on testing in elementary and most recently in the fifth grade.

215.     Dr. Felton also testified that Plaintiff D.S. had deficits in spelling.

216.     Dr. Felton noted no reference to spelling being addressed in the March 30, 2022,
IEP and March 29, 2023, IEPs she reviewed.

217.     Dr. Felton testified that Plaintiff D.S. had difficulties with sentence writing
fluency. Dr. Felton found the March 30, 2022, IEP and March 29, 2023, IEP emphasized
higher-level writing skills like paragraphs, without sufficient focus on the foundational
skill of writing a basic sentence.

218.     Dr. Felton testified that Plaintiff D.S. had deficits in oral reading skills, which she
equated to letter word identification deficits, just measured through reading text instead
of single words. Dr. Felton testified that the March 30, 2022, and March 29, 2023, IEPs
did not address Plaintiff D.S.'s oral reading skills deficit.

219.     Dr. Felton testified that the March 30, 2022, and March 29, 2023, IEPs did not
address Plaintiff D.S.'s skill deficits in the areas of mechanics of writing, such as
punctuation and capitalization, as the IEPs focused more on paragraph construction.

220.     Dr. Felton emphasized that the March 30, 2022, and March 29, 2023, IEPs failed
to appropriately address these fundamental word-level reading and writing deficits.  Dr.
Felton testified that the March 30, 2022, and March 29, 2023, IEPs focused almost
entirely on reading comprehension without targeting the underlying issues in word
recognition and decoding.

221.     In her expert opinion, Dr. Felton testified that the failure to address the core
problem of accurately reading words resulted in the denial of a free and appropriate
public education (FAPE) because comprehension cannot be effectively addressed if the
student cannot read the words.

222.     Ms. Jessica Williams, M. Ed, a special education expert, testified that Plaintiff

D.S. was denied a free, appropriate public education as the March 30, 2022, IEP and

March 29, 2023, IEPs were not appropriate to allow Plaintiff D.S. to make appropriate

progress. (Exhibit 7-Jessica Williams Curriculum Vitae).

223.     Ms. Williams testified that Plaintiff D.S. had significant deficits in phonemic

awareness, fluency, comprehension, decoding, phonics, capitalization, punctuation, basic

math fact fluency, basic addition, and subtraction.  Ms. Williams testified that Plaintiff

D.S. had not even started multiplication or division.

224.     Ms. Williams testified that Plaintiff D.S. that the March 30, 2022, IEP and March

29, 2023, IEP goals were not aligned with his actual needs, which were below grade

level. Ms. Williams testified that DCPS was arbitrarily giving him IEP goals in the March

30, 2022, IEP and March 29, 2023, IEP which aligned to the grade level he would be in

the next school year and corresponding curriculum standards for that grade, which did not

address his present levels of performance and skill deficits.

225.     Ms. Williams testified that Plaintiff D.S. needed direct teaching, systematic

targeted intensive remediation, and targeted instruction to facilitate progress.

226.     Ms. Williams testified that Plaintiff D.S.'s significant executive functioning

deficits as areas as a need requiring additional supports.

227.     Ms. Williams testified that as an advocate for the parent at the March 29, 2023,

IEP meeting, she requested a functional behavioral assessment. She testified that this was

not completed and could have addressed Plaintiff D.S.'s attendance issues through

attendance plans.

228.     Ms. Williams testified that increasing his behavior support services and providing them outside of general education with an additional 15 minutes per school day was important to allow him to make progress.

229.     Ms. Williams testified that Plaintiff D.S.'s attendance concerns should have been addressed through the IEP process and the IEP team, especially since he already had an IEP and was receiving services.

230.     Overall, Ms. Williams' testimony focused on the discrepancy between Plaintiff D.S.'s actual needs (particularly his foundational academic skills and behavioral challenges) and the goals, instruction, and supports outlined in the March 30, 2022, and March 29, 2023, IEPs. She testified that the Defendant DCPS's approach of aligning goals to grade-level curriculum standards, rather than directly and explicitly addressing his significant below-grade-level deficits, resulted in a denial of free, appropriate public education.

231.     Plaintiffs presented the expert report and Ms. Jennifer Holmes testified as an expert explaining how she determined her opinion that the March 30, 2022, and March 29, 2023, IEPs were inappropriate and reason for the compensatory services hours and need for the hours. (Exhibit 8-Jenifer Holmes Curriculum Vitae).

232.     Ms. Holmes testified that based on her observations and expert opinion, Plaintiff D.S. had skill deficits in various areas, including academics, behavior, and executive functioning.

233.     Ms. Holmes testified that Plaintiff D.S. had a difficult time focusing in the classroom setting.

234.      Ms. Holmes testified that Plaintiff D.S. struggled with following multi-step

directions.

235.      Ms. Holmes testified that Plaintiff D.S. had a hard time turning in assignments,

both because they are not getting done and because he forgets to submit them.

236.      Ms. Holmes testified that Plaintiff D.S. demonstrated skill deficits in basic math,

including place value and understanding basic math concepts, which are critical for his

age.

237.      Ms. Holmes testified that Plaintiff D.S.'s skill deficits persisted, and the March

30, 2022, and March 29, 2023, IEPs did not adequately address them.

238.      Ms. Holmes testified that Plaintiff D.S. has deficits in spelling, sentence structure,

capitalization, and punctuation, and IEP goals in the March 30, 2022, and March 29,

2023, IEPs did not specifically or appropriately address these skill deficits.

239.      Ms. Holmes testified that Plaintiff D.S. was in need of intensive support on his

skill deficits and those basic reading, writing, math, and foundational skill levels.

240.      Ms. Holmes testified that Plaintiff D.S. exhibits significant needs in executive

functioning.

241.      Ms. Holmes testified that Plaintiff D.S. 's overall functioning is significantly

impacted by emotional dysregulation, distractibility, and impulsivity.

242.      Ms. Holmes testified that Plaintiff D.S. had difficulty with getting started on

assignments, turning in assignments, working memory, planning and organizing, and task

monitoring.

243.      Ms. Holmes testified that Plaintiff D.S. lacks the skill to self-monitor effectively.

244.    Ms. Holmes testified that Plaintiff D.S. has exhibited defiance and aggression, including instances of fighting.

245.    Ms. Holmes testified that Plaintiff D.S. experiences inattentiveness, hyperactivity, and impulsivity, as noted in his school counselor's behavior support sessions.

246.    Ms. Holmes testified that Plaintiff D.S. has difficulty with appropriate use of language with peers and may make comments perceived as funny by him but offensive to others, potentially escalating issues.

247.    Ms. Holmes testified that Plaintiff D.S. expressive language scores were in the low range.

248.    Ms. Holmes testified that Plaintiff D.S. has difficulty with emotional control.

249.    Ms. Holmes testified that the IEP goals developed in the March 30, 2022, and March 29, 2023, IEPs did not appropriately address his social-emotional behavior and executive function deficits.

250.    Ms. Holmes testified that the March 30, 2022, and March 29, 2023, IEPs were inappropriate and did not adequately address his basic academic skill deficits.

251.    Due to the lack of progress and the failure to revise goals and interventions, Ms. Holmes believed that Plaintiff D.S. was denied a free and appropriate public education (FAPE) during the 2022-2023 and 2023-2024 school years because of the inappropriateness of the March 30, 2022, and March 29, 2023, IEPs.

252.    Ms. Holmes's testimony emphasized that Plaintiff D.S.'s special education and related services needs were not being adequately met by the March 30, 2022, and March 30, 2023, IEPs, particularly concerning his foundational academic skills, executive functioning challenges, and behavioral difficulties.

253.     Ms. Holmes provided an expert report with the following specific

recommendations:

Due to the reports of D.S. struggling to attend to lengthy behavior support sessions, the expert is recommending that he receive compensatory services at a rate of 0.5 hours twice per week individually (for a total of one hour weekly). This individual behavior support service should work on generalizing strategies discussed in small group to D.S.'s everyday life, including the school environment. Consultative behavior support services should be provided at a rate of 4 hours per month. This service is to ensure that in all core academic courses, D.S.'s teachers are implementing behavior interventions with fidelity. The service provider can model for the teachers how to implement the interventions and adjust as needed, as well as provide modeling and guidance on how to effectively prompt D.S. to utilize his de-escalation strategies, collect data on the target behaviors, and adjust interventions as needed to meet his individualized needs. Finally, fourteen (14) hours of teacher training is necessary, to be delivered at the start of each semester for the next two years. This duration was selected because of the amount of time it will take D.S. to learn to independently utilize his de-escalation and attention strategies. Teachers will require a minimum of two hours at the beginning of each semester on D.S.'s behavior intervention plan (if developed), Zones of Regulation (or any other emotional regulation program/strategy that D.S. is using), prompting, data collection, antecedents and consequences, as well as effectively pairing behavior intervention to behavior function. To address the academic areas of math, reading, and writing, where D.S. made minimal progress, it is recommended that D.S. receive 15 hours per month over the course of four years for a total of 600 hours, 20 hours per month in reading over the course of four years for a total of 800 hours, and 12 hours per month in writing over the course of four years for a total of 480 hours.

(Exhibit 3 at 12).

254.     Plaintiffs' expert witnesses testified in the due process hearing about the reason

for the compensatory services and need for the hours of compensatory services for D.S.

255.     During the due process hearing, the evidence demonstrated that D.S. was entitled

to 720 minutes of behavior support services and D.S. was never provided those behavior

support services by Defendant DCPS.

256.     During the due process hearing the evidence demonstrated D.S. had math deficits

that were not appropriately addressed in the March 30, 2022, and March 30, 2023, IEPs.

257.     During the due process hearing the evidence demonstrated D.S. had reading deficits that were not appropriately addressed in the March 30, 2022, and March 30, 2023, IEPs.

258.     During the due process hearing the evidence demonstrated D.S. had written expression deficits that were not appropriately addressed in the March 30, 2022, and March 30, 2023, IEPs.

259.     During the due process hearing the evidence demonstrated D.S. had executive functioning and social-emotional deficits that were not appropriately addressed in the March 30, 2022, and March 30, 2023, IEPs.

260.     During the due process hearing, the evidence demonstrated that D.S. was performing several grades below grade level in math.

261.     During the due process hearing, the evidence demonstrated that D.S. was performing several grades below grade level in written expression.

262.     During the due process hearing, the evidence demonstrated that D.S. was performing several grades below grade level in reading.

263.     During the due process hearing, the evidence demonstrated that within the classroom there were many observed instances of D.S. engaging in noncompliant, inappropriate decision making and aggressive behaviors towards adults and peers.

264.     School witness Celeste Locke was the LEA Representative for the Defendant.

265.     Ms. Locke testified that D.S. would struggle with accessing grade level material if he had a cognitive profile of about a 63 IQ and basic reading skills in the low 60s.

266.     During cross examination, Ms. Locke testified that an IEP should be developed to allow the child to make appropriate progress in light of the child's unique circumstances.

267.     Ms. Locke testified during re-direct that in her opinion the student was denied a

FAPE during the two-year school period at issue in the case.

268.     School witness Tiffany Spears, a math instructional coach at Johnson Middle

School within DCPS, was qualified as an expert in special education programming and

placement.

269.     When questioned about the March 29, 2023, IEP meeting, Ms. Spears testified she

remembered being in the meeting but did not remember exactly what was discussed.

270.     Ms. Spears confirmed during testimony that she taught math to D.S. in 7th grade

and provided math support in 6th and 8th grade. Ms. Spears testified that for the 2022

school year, when Plaintiff D.S. was reportedly on a third-grade level in math, there were

no remedial math goals in that IEP.  She also stated there were no remedial goals to

address math deficits in the March 2023 IEP.

271.     Ms. Spears, while addressing a comment on D.S.'s  8th grade report card about

"poor behavior," testified that she was not aware of any assessments that IEP teams

recommended concerning D.S.''s behavior and not aware of any specific plan put into

place by the IEP team to address his behaviors.

272.     School witness Dr. Christina Tripodi was qualified as an expert in school

neuropsychology and school psychology.

273.     Dr. Tripodi testimony was based exclusively on her review of the record,

specifically the March 2023 IEP, March 2022 IEP and previous evaluations.

274.     Dr. Tripodi testified she did not meet with the Parent or Student.

275.     Dr. Tripodi testified that D.S. IQ was low, but she did not recall the Student's

full-scale IQ of 63 from a 2018 evaluation.

276.     Dr. Tripoli testified and acknowledged that one of the evaluations indicated D.S. regressed in math between 2018 and 2021.

277.     Dr. Tripoli testified that if a student lacks foundational academic skills, it would likely result in decreased academic performance on tests like the Woodcock-Johnson.

278.     School witness Katrina Ramsey is a social worker who was qualified as an expert witness in school social work.

279.     Ms. Ramsey testified she was assigned to work with D.S. on March 17, 2023.

280.     Ms. Ramsey testified she created the missed services plan to address behavioral support services that Plaintiff D.S. should have received between September 2022 and February 2023. This plan included recommendations for individual and group counseling sessions, as well as potential support within the classroom to compensate for the missed hours.

281.     During cross examination, Ms. Ramsey testified that prior to working with the student, she had only reviewed his grades in Aspen and had not consulted with his teachers as alleged during her testimony on direct examination.

282.     During cross examination, Ms. Ramsey testified that when assigned to work with D.S. On March 17, 2023, she had a case load of about 80 students or more.

283.     During cross examination, Ms. Ramsey confirmed the missed services plan was for 720 minutes of behavioral support services to make up for missed time not provided to the student.

284.     During cross examination Ms. Ramsey testified the 720 minutes of missed behavior support services had never been provided to D.S. by Defendant DCPS.

**VII.    Plaintiffs are Prevailing Parties in the Administrative Proceeding.**

285.     Plaintiffs are "prevailing parties" in the administrative proceeding on one of the

two issues before the H.O. as reflected below:

   a.   Defendants denied Student a FAPE by failing to implement the behavior support

        services (e.g. at least 12 hours) required from September 2022 through February

        2023 in his March 30, 2022, IEP.

286.     The H.O. awarded the student 30 hours of compensatory education counseling

services to be provided, at Defendant DCPS' expense, by a qualified provider of the

parent's choice.

287.     As the prevailing party in the due process proceeding, the IDEA provides that

Plaintiffs may seek reimbursement for their reasonable attorneys' fees (including costs),

subject to the discretion of this Court.

## VIII.    CLAIMS FOR RELIEF

### COUNT I

### (Hearing Officer Erred When he Determined the Statute of Limitation Issue)

288.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

herein.

289.     The Court must give "due weight" to the hearing officer's determinations and "may

not substitute its own notions of sound educational policy for those of the school

authorities." ...That said, less deference is to be accorded to the hearing officer's decision

than would be the case at a conventional administrative proceeding, and a decision "without reasoned and specific findings deserves little deference." *Damarcus S. v. D.C.*, 190 F. Supp. 3d 35, 42 (D.D.C. 2016).

290.     In *Damarcus S*, the Court "noted, the Hearing Officer found that 'the KOSHK date for the violations alleged in the instant case is the same date as the alleged violations themselves,' but she offered no explanation in support of that conclusion. Rather, she simply took for granted that plaintiffs should have been aware of any IEP deficiencies on the very day the IEP was created, and that any failures in implementation should also have been recognized instantaneously. *Damarcus S. v. D.C.*, 190 F. Supp. 3d 35, 45 (D.D.C. 2016).

291.     "The statute of limitations is an affirmative defense that defendant must prove." *Firestone v. Firestone*, 316 U.S. App. D.C. 152, 76 F.3d 1205, 1210 (1996).

292.     Defendant DCPS did not prove that Plaintiff C.S. was aware of the March 30, 2022, IEP prior to consulting with her special education advocate, which falls within the two-year statute of limitations.

293.     Plaintiff D.S. filed her due process complaint on September 6, 2024.

294.     Plaintiff D.S. alleged that the March 30, 2022, IEP was inappropriate and that she did not know or could have known of the IDEA violations until she retained a special education advocate, and the advocate requested the educational records.

295.     The HO acknowledged that Plaintiff C.S. did not attend the March 30, 2022, IEP.

(Exhibit 1-Hearing Officer Decision at 10).

296.     The March 30, 2022, IEP acknowledged everyone who actually attended that IEP

meeting which did not include Plaintiff C.S. or Plaintiff D.S.  (Exhibit 4- March 30, 2022,

IEP at 1).

297.     On page 1 of the March 30, 2022, IEP, the Defendant notes which IEP members

attended the IEP meeting as reflected below:

**IEP MEETING DETAILS**

| Type of Meeting | Meeting Date |
|---|---|
| Annual Review | 03/30/2022 |

**SIGNATURES OF IEP TEAM PARTICIPANTS**

**IEP MEETING PARTICIPANTS**

*The list below documents the individuals who participated (attended and had opportunity to provide input) in the development of this IEP; signatures do not constitute agreement or disagreement with the content of this IEP, or authorize consent for Part B services. Parents indicate consent for service implementation by signing the Consent for Initial Provision of Services Form when the student is initially deemed eligible for IDEA, Part B services.*

| Participant Role | Name | Attended Meeting? | Signature |
|---|---|---|---|
| Parent | Cierra Saunders | Did not attend | |
| Student | Deon M. Saunders | Did not attend | |
| Special Education Teacher | Tiffany Spears | Attended by phone | |
| Evaluator/ Individual who can interpret assessment results | Celeste Locke | Attended by phone | |
| LEA/School Representative LEA Rep | Celeste Locke | Attended by phone | |
| General Education Teacher | D. Johnson | Attended by phone | |
| Social Worker | Nikia Harrod | Attended by phone | |

*Id.*

298.     The HO was aware that Plaintiff C.S. did not attend the March 30, 2022, IEP but

determined she knew or should have known of the IDEA violations.

299.     Plaintiff C.S. did not receive the March 30, 2022, IEP until after her advocate requested Plaintiff D.S.'s educational records from the Defendant at some point at the end of the 2022-23 school year.

300.     Defendant DCPS did not produce any evidence during the administrative due process hearing that Plaintiff C.S. received the March 30, 2022, IEP on March 30, 2022.

301.     On March 24, 2023, Plaintiff C.S.'s advocate, Ms. Jessica Williams, requested Plaintiff D.S.'s complete educational file. (Exhibit 9, March 24, 2023, Email to Defendant). Upon information and belief, Ms. Williams, on behalf of Plaintiff C.S., received the March 30, 2022, IEP during the fourth quarter of the 2022-23 school year or later.

302.     Although Plaintiff C.S. testified that she attended all IEP meetings, after reviewing her testimony, it appears Plaintiff C.S. was referring to the IEPs developed for Plaintiff D.S.'s seventh and eighth grade years as she affirmatively testified that she was present at those IEP meetings and signed each IEP.

303.     In the HOD, the HO determined that Plaintiff C.S. knew or should have known of the IDEA violations and refused to consider the appropriateness of the March 30, 2022, IEP.

304.     The H.O. noted that "I find that Mother knew or should have known about the alleged inadequacy of the March 30, 2022, IEP on the date the IEP was formulated." (Exhibit 1 at 20).

305.    Plaintiff D.S. did not attend the March 30, 2022, IEP and did not receive a copy of the March 30, 2022, IEP until some point during the latter part of the 2022-23 school year. Plaintiff C.S. could not have known of the March 30, 2022, IEP deficits because she did not attend that IEP meeting.

306.    The HO contends in the HOD that "Mother testified that she was concerned about Student's grades and behavior in school throughout his/her years at City School 2" (Exhibit 1 at 19).

307.    "[A] lack of progress alone is insufficient to put parents on notice of an IDEA claim if the parents have no baseline to assess how much progress their child is capable of making." *Damarcus S.*, 190 F. Supp. 3d at 46.  Simply acknowledging that her Plaintiff D.S. is insufficient to demonstrate she knew or should have known the March 30, 2022, IEP was inappropriate.

308.    During the due process hearing, the Defendant did not meet its burden to prove that Plaintiff C.S. knew or should have known that the March 30, 2022, IEP was inappropriate. Defendant did not present any evidence of the specific date Plaintiff C.S. received the March 30, 2022, IEP, was informed by the Defendant, the special education advocate, or any other professional that the March 30, 2022, IEP was inappropriate, or receive testimony from any witness that Plaintiff C.S. knew or should have known of the IDEA violation.

309.     Further, the Defendant failed to produce any evidence or testimony that it provided the March 30, 2022, IEP to Plaintiff C.S. on March 30, 2022.  In fact, the Defendant withheld the March 30, 2022, IEP from Plaintiffs justify the tolling of the stature of limitations.

310.     The HO did not address the appropriateness of the March 2022 IEP ruling that Plaintiff C.S. testified that she attended all IEP meetings despite not signing the March 2022 IEP or being identified as a participant at the March 2022 IEP as noted in the prior written notice.

311.     The Court should reverse the HO's decision as it is wrong and the process was not regularly made.


## COUNT II

### (Hearing Officer Erred and Deference Should Not Be afforded to the HOD When Hearing Officer Failed to Address Appropriateness of March 30, 2022, IEP and Determined March 29, 2023, IEP Was Appropriate)


312.     Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

313.     Plaintiffs are a "party aggrieved" by the H.O. Decision within the meaning of 20 U.S.C. §1415(i)(2)(A).

314.    The Plaintiffs as the party filing the administrative due process hearing and alleging the inappropriateness of the IEPs bear the burden of production to show that the IEPs were inappropriate but 'Courts in this Circuit have found that plaintiffs' burden of production 'for a prima facie case is low.'" *Uhlenkamp v. D.C.*, 691 F. Supp. 3d 224, 236 (D.D.C. 2023).

315.    "If the plaintiffs meet their burden of production and establish a prima facie case, the "burden of persuasion falls on the public agency" to establish "the appropriateness of the existing or proposed program or placement[.]" *Id.* at 236.

316.    The H.O. misapplied the burden of production and persuasion when he determined the March 29, 2023, IEP was appropriate.

317.    The Defendants failed to disprove that the IEPs addressed all of Plaintiff D.S. needs.

318.    Plaintiffs assert that the HOD is wrong as it relates to the appropriateness of the Plaintiff D.S.'s March 30, 2022, and March 29, 2023, IEPs.

319.    The evidence overwhelmingly demonstrated Defendant denied D.S. a FAPE by failing to develop appropriate IEPs reasonably calculated to enable him to make progress appropriate in light of his circumstances when it developed the March 30, 2022, and March 29, 2023, IEPs.

320.    "The IEP must aim to enable the child to make progress. ... The essential function of an IEP is to set out a plan for pursuing academic and functional advancement." *Endrew*

*F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017). "A focus on the particular child is at the core of the IDEA. The instruction offered must be '*specially designed*' to meet a child's '*unique* needs' through an "[*i* I*ndividualized* education program." *Id*.

321. Plaintiff D.S. has a number of skill deficits that were not addressed or reflected in the present levels of academic achievement and functional performance, IEP goals, specially designed instruction, related services, supplementary aides, services, accommodations, and modifications.

322. Defendant was aware of the following skill deficits:

a. **Reading:** phonological awareness, decoding, word recognition, reading fluency, reading comprehension;

b. **Math:** math calculation (addition, subtraction, multiplication), mental math, applying math concepts to problem solving, understanding place value, number sense, letter and number recognition;

c. **Written Expression:** poor handwriting, spelling, independently forming words and sentences, reliance on patterned sentences for reading, translating ideas to paper, capitalization, punctuation, paragraph construction; and

d. **Executive Functioning:** attention, focus, working memory, processing speed, impulse control, inhibition, shifting attention, cognitive flexibility, emotional control, cognitive flexibility, planning, organizing, initiation, and monitoring.

323.    Defendant knew of K.M.'s specific academic, functional, behavioral, and social-emotional needs but failed to develop appropriate IEPs to address his needs.

324.    Moreover, the Defendant repeated IEP goals, failed to provide IEP goals related to the majority of Plaintiff D.S. 's identified skill deficits, developed IEP goals that were not appropriate and realistic as many of the IEP goals were on grade level whereas Plaintiff D.S. was not on grade level, failed to provide an appropriate amount of specially designed instruction related to the skill deficits that impeded his progress, failed to provide appropriate and a sufficient amount of related services, and failed to provide appropriate supplementary aides, services, modifications, and accommodations

325.    The March 2023 IEP did not appropriately address the Students LRE because his special education services were moved from outside general education in the March 2022 IEP to inside of general education in the March 2023 IEP.

326.    Plaintiffs' expert witnesses testified that the March 30, 2022, and March 29, 2023, IEPs were not appropriate to allow Plaintiff D.S. to make appropriate progress.

327.    Plaintiff D.S.'s IEPs did not appropriately provide for extended school year services for the 2022 or 2023 summers. The evidence showed that the Defendant failed to consider and properly document its basis for denying Plaintiff D.S. ESY for the 2022 and 2023 summers. The evidence overwhelmingly indicated that K.M. had deficits that would be jeopardized over the summer break. The IEP Team begins the ESY determination process

by considering whether the break in service will jeopardize one or more critical skills. *See* 34 C.F.R. §300.106(b)(1) 2 34 C.F.R. §300.106(a)(3) 3 34 C.F.R. §300.106(a)(2); 34 C.F.R. §300.324(b)(1)(i) 4. The evidence indicates that reading, writing and math are critical life skills for a student's overall academic success. Non-academic skills also include social, functional, and behavioral skills that have a direct educational impact. The IEP Team is required to describe the educational impact of the break in service on any identified critical skill and to support any identified concerns with student data. The IEP Team must consider the degree of regression that the student will experience in any critical skill identified as potentially jeopardized by the break in service. The Defendant failed to properly consider Plaintiff D.S.'s regression related to the summers of 2022 and 2023, denying Plaintiff D.S.'s ESY services both summers despite the need for ESY services. Plaintiff D.S. was denied a FAPE when she was not provided with ESY services.

328.    The H.O. erred when he failed to determine if the March 30, 2022, IEP was inappropriate and when he wrongly determined the March 29, 2023, IEP was appropriate.

## COUNT III

**(Appeal of Hearing Officer Decision because Hearing Officer Decision was partially wrong and not regularly made)**

### The Hearing Officer Decision Was Partially Wrong and Not Regularly Made

329.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

330.    Plaintiffs are "prevailing parties" in the administrative proceedings on one of the two issues before H.O.

331.    "The party challenging the hearing officer's ruling must 'at least take on the burden of persuading the court that the hearing officer was wrong,' and a court "upsetting the officer's decision must at least explain its basis for doing so." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C.Cir.1989). … And a decision "without reasoned and specific findings deserves little deference." *Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.C.Cir.1991) (internal quotations omitted)." *Id*.

332.    The process was not regularly made, and the H.O. Decision was partially wrong in the underlying administrative litigation when H.O. failed to consider testimony and give sufficient weight to all of Plaintiffs expert witnesses when drafting the HOD.  Therefore, the process was extremely prejudicial to the Student and Parent, flawed and clearly erroneous, and the decision rendered should be partially overturned by this Court.

333.    The process was not regularly made in the underlying administrative litigation and the H.O. Decision was partially wrong when H.O. mischaracterized witness testimony.  For instance, the Parent did not attend all IEP meetings for the student. Therefore, the process

was extremely prejudicial to the Student and Parent, flawed and clearly erroneous, and the decision rendered should be partially overturned by this Court.

334.    The process was not regularly made in the underlying administrative litigation and the H.O. Decision was partially wrong when inadequate analysis was provided for an insufficient relief amount of 30 hours of compensatory education for behavior support services when  the March 2022 and March 2023 IEPs were inappropriate and the expert witnesses recommended over 1800 hours of compensation education for the Student.

335.    The process was not regularly made in the underlying administrative litigation and the H.O. Decision was partially wrong when not one scintilla of evidence was presented by Defendant on their SOL affirmative defense in the due process hearing.

## **COUNT IV**

**(Plaintiffs as Prevailing Parties are Entitled to Reasonable Attorney's Fees, Costs, Expert Witness Fees and Litigation Costs)**

336.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

337.    Plaintiffs are "prevailing parties" in the administrative proceedings on one of the two issues before H.O.

338.    Plaintiffs are "prevailing parties" in the administrative proceeding on one of the two issues before the H.O. as reflected below:

b.  Defendants denied Student a FAPE by failing to implement the behavior support services (e.g. at least 12 hours) required from September 2022 through February 2023 in his March 30, 2022, IEP.

339.    The H.O. awarded the student 30 hours of compensatory education counseling services to be provided, at Defendant DCPS' expense, by a qualified provider of the parent's choice.

340.    As the prevailing party in the due process proceeding, the IDEA provides that Plaintiffs may seek reimbursement for their reasonable attorneys' fees (including costs), subject to the discretion of this district court.

341.    Moreover, D.C. Code Ann. § 38-2571.03(7)(A) explicitly states that a prevailing party may be awarded expert witness fees as part of its costs.

342.    Plaintiffs reserve the right to amend this claim for relief to include a request for reimbursement of additional reasonable attorneys' fees (including costs), again subject to the discretion of this district court, which are incurred in this proceeding should Plaintiffs be designated as a prevailing party.

## IX.    PRAYER FOR RELIEF

NOW WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, and that this Court issue an Order:

A.  Enter declaratory judgment that Plaintiff C.S. was not aware of or could not have been aware of the IDEA violations and Defendant withheld the March 30, 2022, IEP from Plaintiffs justifying the tolling of the statute of limitations;

B.  Enter declaratory judgment that the March 30, 2022, IEP and March 29, 2023, IEPs are both inappropriate necessitating the need for an award of compensatory services as recommended by Expert Witness Jennifer Holmes;

C.  Enter declaratory judgment entitling Plaintiffs to compensatory services for Defendants failure to provide ESY services during the 2022 and 2023 summers;

D.  Enter declaratory judgment reversing HOD that Plaintiff D.S.'s March 29, 2023, IEP was appropriate, and award compensatory services recommended by Expert Witness Jennifer Holmes;

E.   Enter declaratory judgment that the Plaintiffs are prevailing parties in this matter;

F.  Award all attorney's fees, costs, expert witness fees and costs for the administrative hearing and all attorney's fees, costs, and expenses for the instant action;

G.  Order Defendants to reimburse Plaintiffs all costs and expenses incurred in litigating this matter including, but not limited to: expert witness fees, depositions, and court costs;

H.   Order Defendants to reimburse Plaintiffs for all costs incurred due to Defendants' failure to provide Plaintiff D.S. appropriate services;

I.  Award Plaintiffs all attorneys' fees, including litigation expenses and costs, incurred in litigating all claims raised under the fee-shifting provisions of the IDEA; and

J.   Award any other relief this Court deems just and proper.


## X.    JURY DEMAND

Now Come the Plaintiffs, D.S., a minor, and Cierra Saunders individually and on behalf of D.S., by and through their attorneys, The Harvey Law Group, PLLC and The Law Offices of Keith L. Howard, PLLC. and demand a trial by jury.

Respectfully submitted, this the 14th day of March 2025.

Cierra Saunders, as Parent and Next Friend of D.S.


By Counsel


 THE HARVEY LAW GROUP, PLLC

_____    /S/____
Stephenson Harvey, Esq.
Bar No.: 495345
The Harvey Law Group, PLLC
P.O. Box 434
Dunkirk, MD 20754
O:202-291-2914
F: 888-858-1941
E: sharvey@theharveylawgroup.com
W: www.theharveylawgroup.com
Attorney for Plaintiffs

&

THE LAW OFFICES OF KEITH L. HOWARD, PLLC

/s/Keith Howard
Keith Howard
Bar ID: 1617492
The Law Offices of Keith L. Howard, PLLC
19109 W. Catawba Ave. Ste. 200

Cornelius, NC 28031
O: (919) 824-0146
F: 800-341-3931
E: keithh@khowardlaw.com
W: www.khowardlaw.com
Attorney for Plaintiffs